JB:TM:NMA
F.#2005R00060/2010V00059

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - X

ANTHONY DONATO,

                Petitioner,

    - against -                   09 CV 5617 (NGG)

UNITED STATES,

                Respondent.

- - - - - - - - - - - - - - - - - - - X

GOVERNMENT'S OPPOSITION TO ANTHONY DONATO'S
PETITION FOR A WRIT OF HABEAS CORPUS

BENTON J. CAMPBELL
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

Taryn A. Merkl
Nicole M. Argentieri
Assistant U.S. Attorneys
    (Of Counsel)

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . 2

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . 8

    I.   Petitioner's Claims Are Procedurally Defaulted . . . 8

        A.   Legal Standard . . . . . . . . . . . . . . . 8

        B.   Analysis . . . . . . . . . . . . . . . . . . 9

    II.  Petitioner Waived His Right to Challenge Collaterally His Conviction Pursuant to His Plea Agreement . . . 11

        A.   Applicable Plea Agreement Provisions . . . . . 11

        B.   Analysis . . . . . . . . . . . . . . . . . . 13

    III. Petitioner is Not Entitled to Relief Due to the Non-Disclosure of the CW-1 Letter . . . . . . . . . . 16

        A.   Petitioner's Plea of Guilty Was Knowing and Voluntary . . . . . . . . . . . . . . . . . . 17

            1.   Disclosure of the CW-1 Letter . . . . . . 17

            2.   Sentencing Judge's Discretion Under Rule 11(c)(1)(C) . . . . . . . . . . . . . . . 20

            3.   Harmless Error . . . . . . . . . . . . . 24

    IV.  Petitioner's Ineffective Assistance of Counsel Claims are Without Merit . . . . . . . . . . . . . . . . . 28

        A.   Court's Discretion to Deviate from the Sentence in the Agreement After Accepting the Plea . . 29

        B.   Benefits of Entering a Guilty Plea . . . . . . 31

1.  Sentence . . . . . . . . . . . . . . . 31

2.  Global Plea Agreement . . . . . . . . . 34

C.  District Court's Denial of Request for
Discovery . . . . . . . . . . . . . . . . 35

D.  Counsel's Failure to Request a Continuance . . . 36

CONCLUSION . . . . . . . . . . . . . . . . . . . . . 39

ii

Case 1:05-cr-00060-NGG Document 1383-2 Filed 07/16/15 Page 4 of 84 PageID #: 14497

<u>PRELIMINARY STATEMENT</u>

The government respectfully submits this memorandum of law in opposition to petitioner Anthony Donato's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. For the reasons stated below, the Court should dismiss the petition or, in the alternative, deny it in its entirety.

Petitioner offers two main arguments in support of his application for a writ of habeas corpus. First, Donato contends that the suppression of exculpatory evidence, namely, a letter pertaining to a government cooperating witness, caused his guilty plea to be involuntary, while also causing Fifth and Sixth Amendment violations. Second, petitioner argues that his counsel was ineffective in a number of respects.

As discussed further below, petitioner has procedurally defaulted on all of his claims. Moreover, even if petitioner's claims were preserved, they should be denied on the merits. First, pursuant to the terms of his plea agreement, petitioner knowingly waived his right to challenge his conviction and sentence collaterally. Second, the allegedly suppressed evidence was cumulative of information supplied to Donato prior to his entry of a guilty plea. Third, the claims of ineffective assistance of counsel must fail because petitioner has not

1

demonstrated that his counsel's performance was constitutionally
defective or that he suffered any prejudice as a result of his
counsel's allegedly deficient performance.  For these reasons,
the § 2255 petition must be denied.

### PROCEDURAL HISTORY

On November 18, 2004, a grand jury sitting in the
Eastern District of New York returned a second superseding
indictment in Criminal Docket No. 03-929 (NGG), charging the
petitioner Anthony Donato with racketeering conspiracy and
illegal gambling.  Donato was arrested on November 19, 2004.  On
November 8, 2005, petitioner pled guilty to racketeering
conspiracy and illegal gambling pursuant to the third superseding
indictment in that case (Criminal Docket No. 03-929, Docket Entry
No. 375).

On April 17, 2008, a grand jury sitting in the Eastern
District of New York returned a ninth superseding indictment in
Criminal Docket No. 05-060 (NGG), charging the then-street boss
of the Bonanno organized crime family of La Cosa Nostra (the
"Bonanno family") Michael Mancuso, the former acting boss Vincent
Basciano, and Bonanno family soldiers Anthony Indelicato, Anthony
Aiello and Anthony Donato.  Donato was charged in three counts
related to the murder of Frank Santoro, including conspiracy to
murder in aid of racketeering (Count Six), murder in aid of

2

racketeering (Count Seven) and use of a firearm in connection with the murder (Count Eight).

On August 6, 2008, petitioner pled guilty to Count Six of the ninth superseding indictment in the 05-060 case pursuant to a plea agreement entered into under Federal Rule of Criminal Procedure 11(c)(1)(C). Petitioner's plea agreement specified an agreed-upon sentence of 25 years, comprising a 25-year sentence on the 03-929 conviction, with a 10-year sentence on the 05-060 conviction to run concurrently with the sentence on the 03-929 case. See Plea Agreement ¶ 3 (attached as Exhibit A). On December 16, 2008, the Court sentenced Donato to the exact sentence stipulated by the parties in his plea agreement, namely, 300 months on the 03-929 conviction, with 120 months on the 05-060 conviction to run concurrently with the 300 month term. Donato did not appeal his sentence.

On December 16, 2009,[1] Donato filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("2255 Mot."), a Memorandum ("Pet.

---

[1]     For purposes of this memorandum, the government assumes that the petition was forwarded to prison officials for mailing on December 16, 2009 as indicated in the petitioner's certificate of service and thus deems the petition filed on that date under the prison mailbox rule. See Houston v. Lack, 487 U.S. 266, 276 (1988). Since the judgment against petitioner was entered no earlier than December 29, 2008, Donato's petition appears to be timely. See Criminal Docket No. 03-929, Docket Entry No. 1095; Criminal Docket No. 05-060, Docket Entry No. 583.

Mem."), and several exhibits.[2] In addition, the defendant has filed supplemental papers, including (1) a Motion to Amend (Docket No. 09-CV-5617, Docket Entry No. 10); (2) a Motion to Supplement (Docket No. 09-CV-5617, Docket Entry No. 11); and (3) a second Motion to Amend (Docket No. 09-CV-5617, Docket Entry No. 13).

<u>STATEMENT OF FACTS</u>

Donato's principal claims on habeas relate to allegations concerning a government cooperating witness, Dominick Cicale (the "Cicale Allegations"). Specifically, Donato argues that the government's failure to disclose a letter from a different cooperating witness regarding the Cicale Allegations constituted a <u>Brady</u> violation, Pet. Mem. at 23, which caused petitioner's guilty plea to be unintelligent and involuntary. Pet. Mem. at 27.

By way of background, on August 17, 2007, several weeks after the verdict against Vincent Basciano in <u>United States v. Basciano</u>, Criminal Docket No. 03-929, a cooperating witness in another matter unrelated to organized crime ("CW-1") made an

---

[2] In addition, petitioner filed a Discovery Request pursuant to 2255 Rule 6. Under Rule 6(b), "[a] party requesting discovery must provide reasons for the request . . . [as well as] any proposed interrogatories and requests for admission, and must specify any requested documents." As demonstrated herein, none of petitioner's claims on habeas present a colorable argument; there is thus no need for discovery pursuant to Rule 6.

allegation to an Assistant United States Attorney[3] that Cicale had propositioned CW-1 to falsely claim that Marco Santomaggio, a prison guard at the Metropolitan Correctional Center ("MCC"), asked CW-1 to kill Cicale on behalf of Basciano.  One of the documents that the government obtained during the investigation was a 7-page letter written by CW-1 (the "CW-1 Letter"), which set forth certain allegations against Cicale.

On November 13, 2007, the government filed a motion for a protective order with this Court seeking a prohibition on the dissemination of CW-1's name beyond defense counsel and the defendants, in addition to the Court's permission to not disclose the names of two inmates who were in the Witness Security Program.  The Court issued protective orders granting the relief sought by the government on December 19 and 20, 2007, and, on January 2, 2008, pursuant to the Court's protective order, the government provided a letter to petitioner's counsel that contained a number of affidavits from Bureau of Prisons staff regarding the Cicale Allegations.  See Gov't Ltr. dated Jan. 2,

---

[3]     On August 15, 2007, two days before the government learned of the allegation, Basciano's defense attorneys submitted an ex parte letter to the Court advising the Court that, on August 13, 2007, Santomaggio had sua sponte communicated with Basciano at the MCC and that Santomaggio later met with Basciano's defense attorneys to inform them of the allegation. Basciano's letter, which was originally filed under seal, was unsealed and provided to the government in September 2007.

2008 (filed as Exhibit B, under seal).  The government provided
further disclosures regarding the allegations in subsequent
letters, dated February 15, 2008 and February 26, 2008.  See
Gov't Ltr. dated Feb. 15, 2008, Docket Entry No. 421 (Exhibit C);
Gov't Ltr. dated Feb. 26, 2008, Docket Entry No. 428 (Exhibit D).
On March 14, 2008, the government filed another motion for a
protective order and sought the Court's inspection of certain
materials, ex parte and in camera, including the CW-1 Letter.
See Government's Motion for a Protective Order, March 14, 2008
(filed under seal).

On March 19, 2008, Donato's co-defendant, Michael
Mancuso, submitted a number of pretrial motions, including a
discovery request for information relating to the Cicale
Allegations.  Donato joined this discovery motion.[4]  On April 29,
2008, the Government responded to the defendants' pretrial
motions by reiterating that it had already complied with all
discovery obligations by disclosing CW-1's name, the contact
information for CW-1's attorney, descriptions of the statements
CW-1 claims Cicale made about the false murder plot, and
affidavits of prison employees relating to the false murder plot

---

[4]     Donato submitted a separate Memorandum of Law in
Support of His and His Co-Defendants' Motions in which he stated
that "[i]n the event Donato's co-defendants make motions that
[sic] applicable to him, Donato joins such motions."  (Docket
Entry No. 439, at p. 12).

allegations.  <u>See</u> Government's Memorandum of Law in Response to Defendants' Pretrial Motions at 16 (Criminal Docket No. 05-060, Docket Entry No. 463).  The Cicale Allegations were also discussed at length during oral argument on the pretrial motions, which was held before the Court on July 17, 2008.  (Criminal Docket 05-060, Docket Entry Nos. 492, 494).  Thus, by the time of his guilty plea in August 2008, petitioner had already litigated the same discovery request that he now claims caused his plea to be not knowing and involuntary.

In addition, on March 24, 2008, the Court issued a written opinion denying a motion for a new trial filed by defendant Vincent Basciano.  The government's response to Basciano's motion, dated March 7, 2008, set forth a detailed description of the Cicale Allegations as well as other evidence tending to impeach Cicale.  <u>See</u> Criminal Docket No. 03-929, Docket Entry No. 1054, Memorandum of Law in Opposition to Defendant Vincent Basciano's Omnibus Post-Trial Motion for a New Trial at 14-22.  The Court's March 24, 2008 opinion contained a discussion of the Cicale Allegations and ultimately concluded, in the context of Basciano's prior trials, that the information regarding the Cicale Allegations provided by CW-1 was not material.  <u>See</u> <u>United States v. Basciano</u>, 2008 WL 794945, at *1-2 (Mar. 24, 2008) (detailing the allegations against Cicale).

7

Accordingly, the record makes clear that, prior to petitioner's entry of a guilty plea on August 6, 2008, the substance of the Cicale Allegations was publicly known and substantial disclosures regarding the allegations were specifically provided to petitioner.

<u>ARGUMENT</u>

I.   <u>Petitioner's Claims Are Procedurally Defaulted</u>

    A.   <u>Legal Standard</u>

"[I]f a petitioner fails to assert a claim on direct review, he is barred from raising the claim in a subsequent § 2255 proceeding unless he can establish both cause for procedural default and actual prejudice resulting therefrom or that he is 'actually innocent' of the crime of which he was convicted." <u>DeJesus v. United States</u>, 161 F.3d 99, 102 (2d Cir. 1998); <u>see also</u> <u>United States v. Pipitone</u>, 67 F.3d 34, 38 (2d Cir. 1995).

"'[C]ause . . . requires a showing of some external impediment <u>preventing</u> counsel from constructing or raising the claim.'" <u>McCleskey v. Zant</u>, 499 U.S. 467, 497 (1991) (quoting <u>Murray v. Carrier</u>, [477 U.S. 478,] 492 (1986)) (emphasis added in <u>McCleskey</u>). Unavailable evidence will not constitute cause "if other known or discoverable evidence could have supported the claim in any event." <u>Id.</u>

8

To demonstrate prejudice, the petitioner "shoulder[s] the burden of showing, not merely that the errors . . . created a <u>possibility</u> of prejudice, but that they worked to his <u>actual</u> and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." <u>United States v. Frady</u>, 456 U.S. 152, 170 (1982) (emphasis in original). In the context of a guilty plea, a petitioner must "show that 'the violation affected substantial rights and that there was a reasonable probability that, but for the error, he would not have entered the plea.'" <u>Zhang v. United States</u>, 506 F.3d 162, 168 (2d Cir. 2007) (quoting <u>United States v. Vaval</u>, 404 F.3d 144, 151 (2d Cir. 2005)) (holding that petitioner did not overcome cause and prejudice standard as to claim that his guilty plea was involuntary because alleged misrepresentations by the Court, petitioner's counsel, and the government were neither misleading nor prejudicial).

B. <u>Analysis</u>

Petitioner's failure to raise his claims on direct appeal precludes him from doing so now. Although his motion asserts that issues related to "evidentiary fact finding" are more appropriately addressed in a section 2255 petition, 2255 Mot. at 10, and that his "direct appeal was waived," <u>id.</u>, these bases do not constitute "cause" for procedural default. As the Second Circuit has squarely held, a defendant's waiver of the

9

right to appeal his conviction or sentence pursuant to a plea agreement does not constitute "cause."  See Garcia-Santos v. United States, 273 F.3d 506, 508 (2d Cir. 2001) (per curiam); Pipitone, 67 F.3d at 39.

In addition, petitioner's claim that the government failed to "disclose exculpatory and impeachment evidence," Pet. Mem. at 17, cannot establish cause, because petitioner had access to all of the information contained in the CW-1 Letter.  See McCleskey, 499 U.S. at 497.  As discussed below, there was no substantive, material information contained in the CW-1 Letter that was not provided to petitioner prior to the entry of his guilty plea.

Moreover, the alleged withholding of evidence by the government could not have actually prejudiced petitioner because the information was not withheld.  As set forth above, the government provided substantial disclosures to Donato that contained all of the information relevant to the Cicale Allegations; information regarding the Cicale Allegations was also publicly available in the Basciano opinion and filings. Indeed, as set forth above, Donato and his co-defendants litigated matters relating to the Cicale Allegations and, at oral argument, articulated possible defenses that could be raised at trial based on the disclosures regarding the Cicale Allegations.

On this record, Donato cannot make out a possibility of prejudice, much less actual prejudice.

Though petitioner need not have raised his ineffective assistance of counsel claims on direct appeal, <u>see</u> <u>Massaro v. United States</u>, 538 U.S. 500, 504 (2003) and <u>Frederick v. Warden, Lewisburg Corr. Facility</u>, 308 F.3d 192, 195-96 (2d Cir. 2002), these claims fail for reasons discussed <u>infra</u> Part IV.

Accordingly, the petition should be denied, as petitioner has procedurally defaulted as to all of his claims except his ineffective assistance claims, which should be denied on the merits.

## II. Petitioner Waived His Right to Challenge Collaterally His Conviction Pursuant to His Plea Agreement

### A. Applicable Plea Agreement Provisions

As set forth in the petitioner's brief, the sentence he now challenges resulted from two separate convictions, pursuant to Criminal Docket Nos. 03-929 and 05-060. By way of background, on November 8, 2005, Donato pled guilty to Counts One and Two of the indictment in the 03-929 case, which charged racketeering conspiracy and illegal gambling. Thereafter, on August 6, 2008, petitioner pled guilty in the 05-060 case pursuant to a plea agreement entered into under Federal Rule of Criminal Procedure 11(c)(1)(C). <u>See</u> Exhibit A. As part of his plea agreement in

11

the 05-060 case, Donato agreed as follows with respect to the 03-929 case:

> On November 8, 2005, the defendant pled guilty to Counts One and Two of the indictment captioned <u>United States v. Joseph Massino, et al.</u>, 03 CR 929 (S-3) (NGG). Count One charged the defendant with racketeering conspiracy involving predicate acts of attempted murder and gambling involving policy and joker-poker machines; Count Two charged illegal gambling involving joker-poker machines. As part of this agreement, the defendant acknowledges his guilt with respect to those charges, and agrees not to challenge those convictions on appeal or by collateral attack, by petition pursuant to 28 U.S.C. § 2255, or by any other provision.

Plea Agreement at ¶ 1. In addition, with respect to the negotiated 25-year sentence, petitioner's plea agreement provided as follows:

> Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Office and the defendant agree that a sentence of 25 years of imprisonment is the appropriate disposition of the above-captioned cases. Specifically, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Office and the defendant agree that a sentence of 25 years is the appropriate disposition of indictment number 03 CR 929 (S-3) (NGG), and that a concurrent sentence of 10 years is the appropriate disposition of indictment number 05 CR 060 (S-9) (NGG).

Plea Agreement at ¶ 3.

Furthermore, the plea agreement pursuant to which petitioner pled guilty expressly provided:

> The defendant will not file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the above-captioned cases in the event that the Court imposes the term of imprisonment set forth in paragraph 2 or imposes a term below that set forth in paragraph 2. This waiver is binding without regard to the sentencing analysis used by the Court.

Plea Agreement at ¶ 4. Finally, the plea agreement also provided that petitioner "waives any right to additional disclosure from the government in connection with the guilty plea." Id.

B.  Analysis

Because petitioner explicitly waived his right to collaterally challenge his conviction pursuant to the terms of his August 6, 2008 plea agreement, his present challenge to his conviction must be denied.

As a general rule, courts are to "interpret plea agreements according to principles of contract law." United States v. Salcido-Contreras, 990 F.2d 51, 52 (2d Cir. 1993). In Pipitone, 67 F.3d at 39, for example, the Second Circuit expressly rejected a habeas petitioner's attempt to challenge his sentence of 63 months where he had agreed, pursuant to his plea agreement, not to challenge a sentence shorter than 78 months,

13

noting that the court was "loathe to countenance so obvious a circumvention of a plea agreement." See also United States v. Hester, 589 F.3d 86, 94 (2d Cir. 2009) ("[P]ermitting an appeal from a defendant 'who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal' would 'render the plea bargaining process and the resulting agreement meaningless.'" (internal citations and quotations omitted)); Garcia-Santos v. United States, 273 F.3d 506, 509 (2d Cir. 2001) (per curiam) (affirming district court's denial of § 2255 petition on the ground that petitioner had waived right to attack his sentence collaterally pursuant to plea agreement); United States v. Rosa, 123 F.3d 94, 97 (2d Cir. 1997) ("[A] defendant's knowing and voluntary waiver of his right to appeal a sentence within an agreed guideline range is enforceable."); Lisnoff v. United States, 2006 WL 1367413, at *2 (E.D.N.Y. May 18, 2006) (holding that petitioner waived right to bring § 2255 petition because court imposed sentence less than the term agreed to in the plea agreement and therefore "trigger[ed] the waiver provision" in the plea agreement).

In this case, Donato fully understood the terms of the waiver provision, and the Court imposed the exact term requested

in the agreement -- thus triggering the waiver provision.[5]

During Donato's plea colloquy, the Court thoroughly inquired as to whether petitioner understood that he had waived his right to appeal or otherwise challenge his conviction:

> Court:    As part of this agreement you acknowledge your guilt with respect to those charges once again, and you agree not to challenge those convictions on appeal or by collateral attack by petition pursuant to 28 United States Code Section 2255 or by any other provision.
>
> Do you understand and agree to that?

---

[5]    In a Motion to Amend filed on March 19, 2010, petitioner contends that the waiver provision of his plea agreement is unenforceable because his counsel was ineffective in advising him to waive his appellate rights.  In the Motion to Amend, Donato appears to suggest that he might have prevailed on appeal if counsel had advised him to enter into a conditional plea whereby he could challenge adverse Brady rulings.  As discussed below, however, the record evidence is clear that petitioner entered into his plea knowingly and voluntarily and that he fully understood the consequences of his plea.  More specifically, the petitioner affirmed under oath at the time of his plea that he understood that he was waiving his right to appeal and collaterally challenge his sentence pursuant to his plea agreement.  In addition, as discussed herein, there was no Brady violation caused by the government's determination to disclose the substance, rather than the actual text of, the CW-1 Letter.  Finally, Donato has not demonstrated that his counsel's performance was objectively unreasonable or that he suffered any cognizable prejudice as a result of counsel's allegedly deficient performance vis-à-vis the challenged waiver.  The Court should thus reject petitioner's contention that the waiver provision of his plea agreement should not be enforced.

15

Donato:    Yes.

Tr. at 13-14 (Exhibit E).

This colloquy demonstrates that petitioner's waiver of his right to challenge his conviction and sentence in the event that he was sentenced to 25 years of imprisonment or less was knowing and voluntary.  See also infra Part III (addressing petitioner's claim that his plea was not knowing and voluntary). Here, petitioner Donato, having obtained the benefits of pleading guilty pursuant to the terms of his plea agreement and having been sentenced to the exact term specified in the agreement, may not now challenge his conviction and sentence in light of his express waiver of his right to do so.  See Pipitone, 67 F.3d at 39.

Donato knowingly and voluntarily gave up his right to challenge his conviction and sentence by pleading guilty pursuant to the express terms of his plea agreement; his petition must therefore be denied.

III. Petitioner is Not Entitled to Relief Due to the Non-
     Disclosure of the CW-1 Letter

Donato makes a number of related claims on the basis of the government's determination not to disclose the CW-1 Letter. Specifically, Donato claims that (1) his guilty plea was not knowing and voluntary because of his inability to evaluate the

16

CW-1 Letter in determining whether to plead guilty, <u>see</u> 2255 Mot.
Pt. I, at 5-6;[6] (2) the district court's issuance of a protective
order as to the CW-1 Letter violated his Fifth Amendment rights,
<u>see</u> 2255 Mot. Pt. IV, at 9; (3) his counsel's performance was
ineffective vis-à-vis the CW-1 Letter in that his counsel:
(a) failed to file for a writ of mandamus challenging the
district court's issuance of a protective order as to the Letter,
<u>see</u> 2255 Mot. Pt. III, at 8-9, and (b) failed to hire a private
investigator to develop evidence regarding the allegations in the
CW-1 Letter, <u>see</u> 2255 Mot. Pt. V, at 9 continuation page; and
(4) his counsel was ineffective in that he failed to seek a
continuance, <u>see</u> Mot. to Amend filed March 8, 2010 (Docket No.
09-CV-5617, Docket Entry No. 10).  Each of these claims is
without merit.

    A.   <u>Petitioner's Plea of Guilty Was Knowing and Voluntary</u>

       1.   <u>Disclosure of the CW-1 Letter</u>

Petitioner asserts that by not disclosing the CW-1
Letter, the government failed to produce favorable and material

---

[6]    In a Motion to Supplement his petition filed on March
15, 2010 (Docket Entry No. 11), Donato also argues that the
government's alleged failure to disclose exculpatory and
impeachment evidence constituted prosecutorial misconduct.  This
claim is both procedurally barred and without merit.  As an
initial matter, petitioner failed to raise this claim in a direct
appeal; he is thus barred from doing so now.  In addition, as
demonstrated herein, there was no <u>Brady</u> violation with respect to
the Cicale Allegations.

17

evidence in violation of its obligations under Brady v. Maryland, 373 U.S. 83, 87 (1963) (holding prosecution's suppression of "evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment"), and that as a result, petitioner's plea was not knowing and voluntary. See Pet. Mem. at 17. The only withheld evidence on which petitioner bases his Brady claim is the CW-1 Letter.[7]

Although the government did not disclose a copy of the CW-1 Letter to petitioner, it did disclose all material information contained in the CW-1 Letter prior to Donato's guilty plea. The exact text of the CW-1 Letter thus constitutes cumulative impeachment material because the information available to the public and provided to Donato comprised more than ample disclosures regarding the Cicale Allegations.[8] Specifically, the government provided Donato with affidavits containing the following allegations that could be used to impeach Dominick Cicale:

---

[7]    In his discovery motion, Petitioner also requests the trial testimony from various witnesses who testified at Basciano's trials. This testimony has always been available to the public. See Criminal Docket No. 03-929.

[8]    See United States v. Basciano, 2008 WL 794945, at *1-2 (E.D.N.Y. Mar. 3, 2008).

18

- Cicale solicited CW-1 to falsely claim that Marco Santomaggio, a prison guard at the MCC, asked CW-1 to kill Cicale on behalf of Vincent Basciano.

- Cicale explained to CW-1 that the false murder plot could get CW-1 credit with the AUSAs and potentially a lower sentence.

- Cicale caused misconduct and gave orders to other Witsec inmates to create "mischief" in the unit, including "acts of murder sabotage, such as throwing water in the units [sic] cable box and pouring coffee all over the unit kitchen floor prior to inspection."

- CW-1 told supervisors at the MCC about Cicale's false murder plot, including Supervisory Officer Regina Eldridge, who advised other prison officers and Security Investigative Services of the matter.

- The government did not know of the false murder plot before August 2007.

Pet. Exs. D, E, F, G, H, I, J; United States v. Basciano, 2008 WL 794945, at *2. The CW-1 Letter contained the above impeachment information and no other material facts that would have provided Donato with information different in kind than that provided in the affidavits and the Basciano opinion summarizing the Cicale Allegations.[9] Accordingly, Donato has not articulated -- and cannot articulate -- any reason why the government's disclosures

---

[9] In addition to the information set forth above pertaining to Cicale, the CW-1 letter included certain allegations regarding correctional officers with whom CW-1 had contact in prison. Those allegations do not constitute relevant impeachment evidence as to Cicale as they are not statements by Cicale and do not pertain to Cicale's credibility. Accordingly, neither Brady nor Giglio required disclosure to Donato of the allegations in the letter regarding the correctional officers.

regarding the impeachment material for the CW-1 were insufficient.  Thus, his claim must fail as to the alleged suppression of evidence and its impact on the knowing and voluntary nature of his plea.

For the same reasons, petitioner's claim that the suppression of the CW-1 Letter led to a Sixth Amendment violation is also without merit.  Donato broadly asserts that his counsel could have developed "an alternative plausible strategic defense," 2255 Mot. at 5, had he been in possession of the CW-1 Letter.  As set forth above, however, Donato was privy to all material information in the CW-1 Letter and therefore did not suffer, and could not have suffered, a constitutional violation.

2.    Sentencing Judge's Discretion Under
      Rule 11(c)(1)(C)

Petitioner also argues that his plea was not knowing and voluntary because he was misinformed regarding the district court's discretion to sentence him to less than 25 years in the event of a guilty plea.  Donato has failed, however, to demonstrate any actual prejudice with regard to this claim.

Under Federal Rule of Criminal Procedure 11, a court must inform a defendant of each enumerated right contained in Rule 11 during a plea proceeding.  See United States v. Blackwell, 199 F.3d 623, 625 (2d Cir. 1999).  "[N]either [the

20

Second Circuit] nor the Supreme Court has added additional requirements to the Rule 11 plea colloquy beyond those specifically enumerated . . . ." United States v. Mercado, 349 F.3d 708, 711 (2d Cir. 2003). The provisions of Rule 11 relevant to petitioner's claims require a court to inform a defendant of "any maximum possible penalty" and "any mandatory minimum penalty." Fed. R. Crim. P. 11(b)(H)-(I). "This does not mean . . . that the district court must anticipate and warn the defendant of 'every conceivable collateral effect the conviction entered on the plea might have,'" United States v. Couto, 311 F.3d 179, 188-89 (2d Cir. 2002) (quoting Bye v. United States, 435 F.2d 177, 179 (2d Cir. 1970)), or that "a court [must] compare a defendant's sentencing options after a guilty verdict to his sentencing options after a guilty plea." United States v. Glen, 418 F.3d 181, 184 (2d Cir. 2005). Rather, pursuant to Rule 11, a court must ensure that "'an accused is apprised of the significant effects of his plea so that his decision to plead guilty and waive his right to trial is an informed one.'" Glen, 418 F.3d at 189 (quoting Bye, 435 F.2d at 180) (emphasis added in Glen).

Petitioner's primary argument relates to his expectations for his sentence. Petitioner asserts that he was led to believe that the court "would" go below the 25-year

21

sentence set forth in the plea agreement, or at least that there was a "high probability" that the court would do so. See Pet. Mem. at 11-12.

It is difficult to imagine how petitioner arrived at that understanding, as the Court's statements during the plea colloquy, the plea agreement, and a letter from Donato's attorney demonstrate that petitioner was repeatedly informed that he would be sentenced to 25 years if he pled guilty pursuant to the Rule 11(c)(1)(C) plea agreement. During the plea proceeding, the Court advised Donato of the likely possibility that it would impose the sentence in the plea agreement by stating that it would "carefully consider the meeting of the minds as to the sentence to which you have worked out between the defense and the Government. Should I determine that that appears to be a reasonable sentence, I will simply impose that sentence." Tr. at 17 (Exhibit E).

Furthermore, the text of the plea agreement clearly states the consequences of the agreement and applicability of a 25-year sentence:

> [P]ursuant to Rule 11(c)(1)(C) of the Federal
> Rules of Criminal Procedure, the Office and
> the defendant agree that a sentence of 25
> years is the appropriate disposition of
> indictment number 03 CR 929 (S-3) (NGG), and
> that a concurrent sentence of 10 years is the

22

appropriate disposition of indictment number
05 CR 060 (S-9) (NGG).

Plea Agreement at ¶ 3. Furthermore, communications from
petitioner's counsel indicated to Donato that there was every
reason to expect a 25-year sentence upon entering into the
agreement. In a letter dated September 24, 2008, Donato's
counsel, Maurice Sercarz, Esq., stated:

> [Y]ou have agreed to the sentence of 25 years
> on the pending Indictment and 10 years on the
> new Indictment, said terms to run
> concurrently. To argue that some lower
> sentence would be equally or more appropriate
> is therefore, a breach of the plea agreement.

Letter from Maurice H. Sercarz, Esq., to Anthony Donato (Sept.
24, 2008) ("Sept. 24 letter") (attached as Ex. A to Pet. Mem.).

Moreover, petitioner had already pled guilty in the 03-
929 case, exposing himself to the possibility of a 25-year
sentence, before the conduct underlying the Cicale Allegations or
any communications with Mr. Sercarz occurred. Having pled guilty
pursuant to the indictment in the 03-929 case, petitioner had no
reason to believe that the Court could not sentence him to 25
years on the 03-929 conviction. Notably, during petitioner's
plea in the 05-060 case, the Court reminded Donato that the Court
was not upsetting the 03-929 plea:

> Court:        Even if I sentence you
>               differently from what the
>               attorneys or anyone else has

23

> estimated or predicted with one major exception, you would still be bound by your guilty plea. Obviously, the major exception is if it's anything more than 25 years, you have the right to withdraw your plea.
>
> Do you understand that?

Donato:         Yes, sir.

Mr. Goldberg:   Your Honor, just to be clear -- and it's in the agreement -- it's only [sic] right to withdraw the plea on the 05-CR-060.

Court:          Right. That's the only plea I'm taking.

Mr. Goldberg:   That's correct.

Court:          Do you understand that? The other plea is in place and done. Do you understand that?

Donato:         Yes, sir.

Tr. at 17-18 (Exhibit E). Given the totality of the circumstances surrounding Donato's plea, he had no reason to expect that pleading guilty in the 05-060 case would likely result in a sentence of less than 25 years.

     3.   <u>Harmless Error</u>

Assuming <u>arguendo</u> that Donato was misinformed about the Court's discretion at sentencing, the provision of any such misinformation was harmless error. The Second Circuit has

24

"decline[d] to adopt an inflexible rule" as to what constitutes harmless error in a Rule 11(c) sentencing proceeding. United States v. Andrades, 169 F.3d 131, 134 (2d Cir. 1999). In general, harmless error will be found where a "defendant's substantial rights are not affected" by the deviation from Rule 11 procedures. Id.; see Fed. R. Crim. P. 11(h). While the Court, during sentencing, must "inform the defendant of, and determine that the defendant understands . . . . any maximum possible penalty," Fed. R. Crim. P. 11(b)(1)(H), harmless error has often been found where the court understates the maximum penalty, but the actual penalty imposed did not exceed the court's erroneous representation. See Andrades, 169 F.3d at 134; United States v. Westcott, 159 F.3d 107, 112-13 (2d Cir. 1998); United States v. Renaud, 999 F.2d 622, 624-25 (2d Cir. 1993); see also United States v. Raineri, 42 F.3d 36, 42 (1st Cir. 1994) (finding harmless error where there was "no indication that the misinformation given to [defendant] at the Rule 11 hearing led him to expect a lesser penalty than he actually received").

As previously discussed, the circumstances surrounding Donato's plea demonstrate that he was properly informed of the consequences of his plea and that he knowingly and intelligently entered into the Rule 11(c)(1)(C) agreement. In addition, Donato's purported belief that the Court had discretion over his

25

sentence was not actually technically incorrect. The Court certainly could have rejected the plea upon finding the recommended sentence inappropriate. See United States v. Main, 579 F.3d 200, 203 (2d Cir. 2009) (noting that a court considering a plea agreement under Rule 11(c)(1)(C) "can and should consult the Guidelines" in determining whether the recommended sentence is in fact appropriate (citations omitted)).

Even assuming arguendo that Donato did not fully understand the operation of Rule 11(c)(1)(C), the error was harmless for two reasons: (1) petitioner had no reason to believe that there was any significant possibility that the Court would find the agreed-upon 25-year sentence unreasonably high, particularly given that Donato had already pled guilty in the 03-929 case to crimes that exposed Donato to up to 25 years in prison and that he was facing a murder charge in the 05-060 case that would have resulted in a mandatory sentence of life imprisonment if he had been convicted after trial; and (2) petitioner was fully aware of the fact that the government would have the opportunity to withdraw the plea agreement if the Court rejected the agreed-upon sentence.

In this case, the Court made no error in describing the sentence that petitioner would face if the plea were accepted. Donato was at all times fully aware of the maximum sentence that

could be imposed without a subsequent opportunity to withdraw the plea. Furthermore, information provided to Donato by the Court, the government and his own counsel indicated that imposition of the negotiated sentence -- 25 years, with a 10-year concurrent sentence on the 05-060 case -- was the most likely scenario. The Sept. 24 letter by petitioner's counsel specifically included the language of the plea agreement by which Donato agreed to the 25-year sentence, stated that arguing for a lower sentence would "breach" the plea agreement and "cross the line," and remarked that even if the Court were to impose a lower sentence, the government would have the right to withdraw or vacate the agreement. See Sept. 24 letter at 2-3. Similarly, during the plea colloquy, the Court informed Donato that it would "carefully consider the meeting of the minds" of the defense and the government, and upon a determination that the negotiated sentence was "reasonable," the Court would "simply impose that sentence." Tr. at 17 (Exhibit E). Thus, the record evidence makes clear that Donato was fully advised that he was likely to receive the negotiated sentence. In sum, nothing in the plea agreement, plea colloquy or the communications with Donato's attorney indicated that he had a reasonable probability of obtaining a lower sentence. Petitioner has thus failed to demonstrate that his plea was not knowing and voluntary.

For all of these reasons, petitioner's claim that his plea was not knowing and voluntary because he did not understand the consequences of his plea must be rejected.

## IV. Petitioner's Ineffective Assistance of Counsel Claims are Without Merit

Petitioner next argues that his counsel was ineffective in that he (a) misrepresented the Court's authority to deviate from the sentence recommended in the plea agreement; (b) misled petitioner about the benefits of entering into a guilty plea; (c) failed to challenge the District Court's order of July 23, 2008, denying a request for discovery of the CW-1 Letter, and failed to further investigate the matters contained in the CW-1 Letter, Pet. Mot. at 5-9; and (d) failed to seek a continuance in August 2008, Mot. to Amend filed March 8, 2010.

To prevail on a claim of ineffective assistance of counsel, petitioner must establish both that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice. Strickland v. Washington, 466 U.S. 668, 688, 692 (1984). To show prejudice, the petitioner must demonstrate a reasonable probability that, but for counsel's defective performance, the result of the proceeding would have been different. Id. at 694. Where a plea of guilty has been entered, to show prejudice, a petitioner must establish a

28

"reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985); United States v. Couto, 311 F.3d 179, 187 (2d Cir. 2002). Each of petitioner's claims of ineffective assistance is without merit.

A.   Court's Discretion to Deviate from the Sentence
     in the Agreement After Accepting the Plea

Petitioner cannot establish either that his counsel's performance was objectively unreasonable or that he suffered prejudice. Donato claims that his counsel provided him with erroneous legal advice as to the consequences of pleading guilty, namely, that the district court was not required to sentence him to 25 years in the event of a guilty plea. To the contrary, counsel's conduct was objectively reasonable when he clearly explained, in the Sept. 24 letter, the terms of the plea agreement, the negotiated sentence, and the consequences of the agreement. See Sept. 24 letter at 2-3.

Although petitioner's counsel did state in the Sept. 24 letter that the Court could determine that a lesser sentence was appropriate, this statement was neither technically inaccurate nor misleading. It was accurate given that a sentencing judge has discretion under Rule 11(c)(1)(C) to reject the plea

29

agreement if he finds the requested sentence to be inappropriate. However, the Sept. 24 letter did not imply that Donato would receive a lower sentence. Rather, the Sept. 24 letter made clear that if the Court determined that a lower sentence was appropriate, the government could withdraw or vacate the 05-060 plea agreement, and the 03-929 guilty plea would remain in effect. See Sept. 24 letter at 2-3. Counsel's performance was thus objectively reasonable in that he explained all material terms of the plea agreement to Donato and specifically advised him that advocating for a sentence lower than 25 years would comprise a breach of the plea agreement.

In addition, counsel's allegedly deficient performance did not cause Donato to suffer prejudice. Because his counsel fully informed Donato of the terms of the agreement; advised him that arguing for a lower sentence would constitute a "breach" of the agreement; and noted that if the Court were to adopt a lower sentence, the government could always "'withdraw or vacate the plea,'" Sept. 24 letter at 2-3, Donato was fully advised regarding the terms of his plea and he knowingly entered into the plea agreement that recommended a 25-year sentence. He therefore cannot claim that the result -- agreeing to plead guilty in the 05-060 case -- would have been different had he known the limits of the Court's discretion once the Court accepted the plea.

B.  Benefits of Entering a Guilty Plea

1.  Sentence

Donato next asserts that his counsel misled him about
the benefits of entering the guilty plea.  Specifically, Donato
claims that his counsel advised him to plead guilty, because if
he chose to go to trial, the judge could impose a higher sentence
than that negotiated in the plea agreement.[10]  Defense counsel's
advice was objectively reasonable because it was accurate; it
also did not cause petitioner to suffer any prejudice.

Mr. Sercarz's advice was accurate given that petitioner
had already pled guilty to two Counts in 03-929 and was subject
to a sentence in that case of up to 25 years.  Even if Donato had
gone to trial on the 05-060 charges and been acquitted, he could
have been sentenced to 25 years on the 03-929 case.  In addition,
even if Donato had been acquitted in the 05-060 case, the Court
could have used all of the evidence offered at that trial to
determine an appropriate sentence.  See United States v. Massino,
546 F.3d 123, 134-36 (2d Cir. 2008) (affirming district court's
consideration of acquitted conduct in sentencing determination).

---

[10]     In petitioner's words, he claims that Mr. Sercarz led
him to believe that if he went to trial, "the judge would . . .
use acquitted or relevant conduct to enhance Donato's sentence,"
that Donato was "dammed if does and dammed if doesn't," and that
petitioner was "better to gamble" with the plea agreement.  Pet.
Mem. at 7; 2255 Mot. Pt. II, at 7.

31

Moreover, had Donato gone to trial on the 05-060 charges and been convicted of the murder in aid of racketeering, he would have faced a mandatory sentence of life imprisonment.

Alternatively, if petitioner entered into the plea agreement, he would be accepting the 25-year sentence and 10-year concurrent sentence, but would receive the security that this was the maximum sentence the Court could impose without a subsequent opportunity to revoke the plea. As discussed above, there is no credible evidence that Mr. Sercarz indicated that petitioner should expect a reduction of the 25-year sentence. Furthermore, during the plea colloquy, the Court reiterated to Donato that his previous plea exposing him to a 25-year sentence would remain intact:

| Court: | [The 05-060 plea is] the only plea I'm taking. |
|---|---|
| Mr. Goldberg: | That's correct. |
| Court: | Do you understand that? The other plea is in place and done. Do you understand that? |
| Donato: | Yes, Sir. |

Tr. at 18 (Exhibit E).

By explaining to petitioner that he could receive a 25-year sentence even if he was acquitted in the 05-060 case and faced a life sentence if convicted at trial on the 05-060 case,

32

in petitioner's words, "[Mr. Sercarz] represented to Donato that he's dammed if does and dammed if doesn't, that he is better off pleading guilty." Pet. Mem. at 7-8. In light of Donato's prior plea in the 03-929 case and his potential sentencing exposure in the event of a conviction in the 05-060 case, that advice by counsel was objectively reasonable.

Moreover, petitioner cannot establish that he suffered prejudice; namely, that he would not have entered the 05-060 plea agreement had he correctly understood the limits on the Court's discretion. Even if petitioner actually believed that the Court could alter his sentence after accepting the plea agreement, he was aware (1) that the Court's acceptance of the sentence in the plea was a likely outcome, see Tr. at 16-17 (Exhibit E) ("Should [the Court] determine that [the negotiated sentence] appears to be a reasonable sentence, [the Court] will simply impose that sentence."); (2) that any decrease in the sentence would be subject to the government's revocation of the agreement, see Tr. at 14-15 (Exhibit E); Sept. 24 letter at 2 ("[N]othing in this agreement prevents the Court from determining that a reduced sentence is appropriate . . . . But if that happens, the government has reserved the right to 'withdraw or vacate the plea' in Indictment No. 05 Cr. 060."); and (3) that given his prior guilty plea in the 03-929 case, he could have received a

25-year sentence regardless of whether he pled guilty in the 05-060 case.  Because Donato was fully advised of the likelihood that the Court would impose a 25-year sentence and because he at no point could have been assured of receiving a lower sentence, Donato cannot establish that he would not have pled guilty, but for his purported misunderstanding.

    2.  <u>Global Plea Agreement</u>

Donato is unable to claim that his guilty plea was in any way coerced.  A criminal defendant's statements made under oath at his plea allocution "carry a strong presumption of verity," and "constitute a formidable barrier in any subsequent collateral proceedings."  <u>Blackledge v. Allison</u>, 431 U.S. 63, 73-74 (1977).  <u>See also</u> <u>Adames v. United States</u>, 171 F.3d 728, 732 (2d Cir. 1999) ("A criminal defendant's . . . statements made under oath at his plea allocation . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them." (citations omitted)).

Donato alleges that his counsel misrepresented information to him in order to persuade him to plead guilty. Specifically, he claims that: (1) Mr. Sercarz's statement that "[Donato's] colloquy for admission of guilt will begin with 'pursuant to this plea agreement'" was somehow intended to persuade Donato to plead guilty; and (2) Donato "felt concerned"

34

about preventing his codefendants from pleading guilty in the event that he chose to reject the plea. Pet. Mem. at 8, 12, 15.

However, during Donato's plea colloquy, Donato affirmed that he had not been coerced or improperly persuaded to plead guilty as follows:

> Court:      Are you making this plea of
>             guilty voluntarily and of your
>             own free will?
>
> Donato:     Yes, I am.
>
> Court:      Has anyone threatened or
>             forced you to plead guilty?
>
> Donato:     No.

Tr. at 19 (Exhibit E).

Donato has entirely failed to advance any evidence of coercion or unreasonable advice of counsel to support his claims. Thus, because Donato has not demonstrated that his counsel's performance was coercive or that he suffered any prejudice, this claim must be rejected. See Blackledge, 431 U.S. at 74 ("[After a guilty plea,] [t]he subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal.").

C.   District Court's Denial of Request for Discovery

Petitioner's claim that his counsel was ineffective because he failed to challenge the Court's protective order

35

regarding the CW-1 Letter is also without merit. Even if the failure to challenge the protective order was unreasonable at the time (which it was not), the failure caused no prejudice. As set forth above, Donato and his counsel were privy to all material information contained in the CW-1 Letter. A challenge to the Court's protective order would thus not have provided Donato with additional material information that he could have used to prepare his defense. See supra Part III.

D. Counsel's Failure to Request a Continuance

Petitioner's claim regarding his counsel's failure to request a short continuance, which was filed on March 8, 2010 in a Motion to Amend his pending § 2255 petition, is likewise without merit. In his application, Donato argues that his counsel should have sought additional time for Donato to consider pleading guilty and that his counsel could not have continued the investigation into the false murder plot in the amount of time available under the deadline for pleading guilty set by the government.

In support of his claim, Donato relies on a single case, Code v. Montgomery, 799 F.2d 1481 (11th Cir. 1986), in which the Eleventh Circuit concluded that counsel's failure to seek a continuance to develop an alibi defense constituted ineffective assistance of counsel. In Code, the defendant met

his counsel a mere three days before the scheduled trial and his counsel conducted an inadequate investigation into a possible alibi defense. Id. at 1482, 1483. The Code court expressly discussed, however, that a failure to request a continuance does not necessarily constitute ineffective assistance. Id. at 1485 (citing cases).

As set forth above, to prevail on an ineffective assistance claim under Strickland, petitioner must show that his counsel's performance fell below an objective standard of reasonableness and that he suffered prejudice as a result. Donato cannot establish either with respect to his counsel's failure to request a continuance. By August 2008, Donato's case had been pending for over two years, a trial date had been set for early September 2008, and Donato had been in possession of ample disclosures regarding the Cicale Allegations for several months. In addition, due to the pending trial date, the government set a deadline for its offer to Donato of a Rule 11(c)(1)(C) plea agreement under which he was to be sentenced to 25 years, rather than mandatory life imprisonment as would have been required upon his conviction in the 05-060 case.

Under these circumstances, defense counsel's determination not to seek a continuance was not objectively unreasonable. There is absolutely no record evidence from which

to infer that a continuance would have been granted or that the government would have extended the plea deadline in light of the pending trial date. In addition, Donato has failed to establish prejudice. Although petitioner claims in his Motion to Amend that counsel "coerced him into reluctantly agreeing to plead guilty," as discussed above, petitioner stated under oath at the time of his plea that he was pleading guilty voluntarily and of his own free will. Finally, with respect to the Cicale Allegations, petitioner has not articulated how counsel's performance was affected by the failure to request an additional adjournment, nor has he identified any cognizable prejudice with respect to those allegations caused by the lack of a short continuance. Because Donato has failed to establish either element of the <u>Strickland</u> test with respect to this claim, it should be rejected by this Court.

*   *   *   *   *

For the foregoing reasons, petitioner cannot establish (a) that his counsel's performance was objectively unreasonable or (b) that his counsel's allegedly deficient performance caused him any prejudice. Accordingly, petitioner's ineffective assistance of counsel claims must be denied.

38

CONCLUSION

For the reasons stated above, the Court should dismiss the petition or, in the alternative, deny it in its entirety.

Dated: Brooklyn, New York
     April 13, 2010

                               Respectfully submitted,

                               BENTON J. CAMPBELL
                               United States Attorney
                               Eastern District of New York
                               271 Cadman Plaza East
                               Brooklyn, New York 11201

Taryn A. Merkl
Nicole M. Argentieri
Assistant U.S. Attorneys
     (Of Counsel)

<u>CERTIFICATE OF SERVICE</u>

      I hereby certify that I caused a copy of the government's attached MEMORANDUM OF LAW to be served this day by U.S. mail on:

                  Anthony Donato
                  Reg. No. 71455-053
                  F.C.I. Estill
                  P.O. Box 699
                  Estill, South Carolina 29918

                  _____

                  Taryn A. Merkl
                  Assistant U.S. Attorney
                  (718) 254-6064

Dated: April 13, 2010

JDB:JAG/TM/NMA
F.#2005R00060

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA

   - against -

ANTHONY DONATO,

                   Defendant.

- - - - - - - - - - - - - - - - - -X

PLEA AGREEMENT

03 CR 929 (S-3) (NGG)
05 CR 060 (S-9) (NGG)

       Pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the United States Attorney's Office for the Eastern District of New York (the "Office") and ANTHONY DONATO (the "defendant") agree to the following:

       1.   On November 8, 2005, the defendant pled guilty to Counts One and Two of the indictment captioned <u>United States v. Joseph Massino, et al.</u>, 03 CR 929 (S-3) (NGG).  Count One charged the defendant with racketeering conspiracy involving predicate acts of attempted murder and gambling involving policy and joker-poker machines; Count Two charged illegal gambling involving joker-poker machines.  As part of this agreement, the defendant acknowledges his guilt with respect to those charges, and agrees not to challenge those convictions on appeal or by collateral attack, by petition pursuant to 28 U.S.C. § 2255, or by any other provision.



2.    The defendant will plead guilty to Count Six of the indictment captioned <u>United States v. Vincent Basciano, et al.</u>, 05 CR 060 (S-9) (NGG), charging a violation of 18 U.S.C. § 1959(a)(5).  The count carries the following statutory penalties:

a.    Maximum term of imprisonment: 10 years
      (18 U.S.C. § 1959(a)(5)).

b.    Minimum term of imprisonment: none
      (18 U.S.C. § 1959(a)(5)).

c.    Maximum supervised release term: 3 years, to
      follow any term of imprisonment; if a
      condition of release is violated, the
      defendant may be sentenced to up to 2 years
      without credit for pre-release imprisonment
      or time previously served on post-release
      supervision
      (18 U.S.C. § 3583(b), (e)).

d.    Maximum fine: $250,000
      (18 U.S.C. § 3571).

e.    Restitution: to be determined by the Court
      (18 U.S.C. §§ 3663, 3663A).

f.    $100 special assessment
      (18 U.S.C. § 3013).

3.    Pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Office and the defendant agree that a sentence of 25 years of imprisonment is the appropriate disposition of the above-captioned cases.  Specifically, pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure, the Office and the defendant agree that a sentence of 25 years is the appropriate disposition of indictment number 03 CR 929 (S-3)

2

(NGG), and that a concurrent sentence of 10 years is the appropriate disposition of indictment number 05 CR 060 (S-9) (NGG). In the event the agreed-upon sentence is below or above the adjusted offense level under the United States Sentencing Guidelines (the "Guidelines") calculated by the Court, the defendant and the Office consent to such a departure and the Office will inform the Court at the time of sentencing why the departure is justified. If the Court rejects this plea agreement, the defendant, pursuant to Rule 11(c)(5), and the government, shall be afforded the opportunity to withdraw or vacate the plea in indictment number 05 CR 060 (S-9) (NGG). The defendant's sentence, other than the agreed-upon terms of incarceration and supervised release, is subject to the advisory Guidelines and the Court is required to consider any applicable Guidelines provisions as well as other factors enumerated in 18 U.S.C. § 3553(a) to arrive at an appropriate sentence in this case. The Office will advise the Court and the Probation Department of information relevant to sentencing, including criminal activity engaged in by the defendant, and such information may be used by the Court in determining the defendant's sentence. The defendant stipulates that he participated in the murder of Frank Santoro.

3

4.    The defendant will not file an appeal or otherwise challenge, by petition pursuant to 28 U.S.C. § 2255 or any other provision, the conviction or sentence in the above-captioned cases in the event that the Court imposes the term of imprisonment set forth in paragraph 2 or imposes a term below that set forth in paragraph 2.  This waiver is binding without regard to the sentencing analysis used by the Court.  The defendant waives all defenses based on the statute of limitations and venue with respect to any prosecution that is not time-barred on the date that this agreement is signed in the event that (a) the defendant's conviction is later vacated for any reason, (b) the defendant violates this agreement, or (c) the defendant's plea is later withdrawn.  The defendant waives any right to additional disclosure from the government in connection with the guilty plea.  The defendant agrees that with respect to all charges referred to in paragraphs 1 and 5 he is not a "prevailing party" within the meaning of the "Hyde Amendment," 18 U.S.C. § 3006A note, and will not file any claim under that law.  The defendant agrees to pay the special assessment by check payable to the Clerk of the Court at or before sentencing.

5.    The Office agrees that no further criminal charges will be brought against the defendant for (a) illegal gambling involving policy, in or about and between January 1979 and January 2003, as alleged in Racketeering Act One of indictment

4

number 03 CR 929 (S-3) (NGG); (b) illegal gambling involving joker-poker machines, in or about and between January 1979 and January 2003, as alleged in Racketeering Act Two and Count Two of indictment number 03 CR 929 (S-3) (NGG); (c) the attempted murder of David Nunez, on or about November 14, 1985, as alleged in Racketeering Act Three of indictment number 03 CR 929 (S-3) (NGG); (d) conspiring, on or about and between January 1, 2001, and February 15, 2001, to murder Frank Santoro, and the murder of Frank Santoro, as alleged in Racketeering Act Two and Counts Six and Seven of indictment number 05 CR 060 (S-9) (NGG); and (e) using a firearm, on or about February 15, 2001, in relation to the murder of Frank Santoro, as alleged in Count Eight of indictment number 05 CR 060 (S-9) (NGG), it being understood that this agreement does not bar the use of such conduct as a predicate act or as the basis for a sentencing enhancement in a subsequent prosecution including, but not limited to, a prosecution pursuant to 18 U.S.C. §§ 1961 et seq., and at the time of sentence, it will move to dismiss the remaining counts of the indictment and any underlying indictments with prejudice. Based upon information now known to the Office, it has no present intention of bringing additional criminal charges against the defendant.

6.     This agreement does not bind any federal, state, or local prosecuting authority other than the Office, and does not prohibit the Office from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the defendant.

7.     This agreement is conditioned upon the following: (a) the defendants listed below (the "covered defendants") entering guilty pleas on or before August 8, 2008; and (b) acceptance of those pleas by a United States District Court Judge before the time of sentencing.   The covered defendants are:

>    (i)     Michael Mancuso;
>
>    (ii)    Anthony Indelicato;
>
>    (iii)   Anthony Aiello; and
>
>    (iv)    Anthony Donato.

If fewer than all of the covered defendants satisfy conditions 7(a) and 7(b), or if any of the covered defendants subsequently seeks to withdraw his guilty plea, the Office, in its sole discretion, may elect to void any or all of the covered defendants' plea agreements and proceed to trial.   No covered defendant will have the right to withdraw his guilty plea in any of those circumstances.

6

8.    No promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties.  This agreement supersedes all

prior promises, agreements or conditions between the parties. To become effective, this agreement must be signed by all signatories listed below.

Dated:     Brooklyn, New York
           August 6, 2008

                              BENTON J. CAMPBELL
                              United States Attorney
                              Eastern District of New York

                   By: _____
                              Jeffrey A. Goldberg
                              Assistant United States Attorney


                              Approved by:

                   _____
                   John D. Buretta
                   Supervising Assistant U.S. Attorney


I have read the entire agreement and discussed it with my attorney. I understand all of its terms and am entering into it knowingly and voluntarily.

_____
ANTHONY DONATO
Defendant


Approved by:

_____
Maurice Sercarz, Esq.
Counsel to Defendant

8

**Exhibit B**

**FILED UNDER SEAL**



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*

*Brooklyn, New York 11201*

February 15, 2008

By ECF

Ephraim Savitt, Esq.

    Re:  United States v. Vincent Basciano
         Criminal Docket Nos. 03-929 and 05-060 (NGG)

Dear Mr. Savitt:

      The government writes in response to the defendant
Basciano's discovery letter dated January 17, 2008, seeking items
enumerated therein as (a) through (x), and in response to the
defendant's discovery letter dated November 27, 2007,
specifically in regard to enumerated items 30 through 34.

      With respect to those requests, the government makes a
few preliminary observations.  The government has complied, and
will continue to comply, with its Brady and Giglio obligations.
The focus of the above defense requests addressed is the
allegation that cooperating witness Dominick Cicale asked another
inmate to participate in a false murder plot in regard to
Basciano (the "false murder plot allegation").  As to that
matter, the government has made appropriate disclosures in
compliance with its Brady and Giglio obligations, and further
disclosures that go well beyond those requirements.
Specifically, the government has disclosed the name of the inmate
who made the allegation (pursuant to a protective order), has
described the statements the inmate claims Cicale made about the
false murder plot, and has put defense counsel in contact with
the inmate's attorney.  In addition, beyond that disclosure, the
government has provided you with affidavits prepared by Bureau of
Prisons ("BOP") employees in relation to that allegation and
related allegations.  The responses the government provides below
further go beyond the requirements of Brady and Giglio, and are
provided as a courtesy to the defense in light of the Court's
request that the government respond to the particulars of the
defendant's discovery requests.

In addition, it is the government's view that many of the defendant's requests seek information that is otherwise not discoverable, either because the information does not constitute Rule 16 material, does not qualify as <u>Brady</u> or <u>Giglio</u>, or is subject to privilege, such as the deliberative process privilege, the informant privilege or constitutes work product.  We make the disclosures set forth below without waiver of any privilege or appropriate objection based on those or other grounds.

Finally, the government notes that it does not agree with many of the characterizations that are embedded in the requests (<u>see</u>, <u>e.g.</u>, item (p) in the January 17 letter).  Thus, the government's responses should not be construed as agreement with those characterizations.

The government's individual responses are set forth below.

<u>January 17, 2008 Letter</u>

a.   We are not in possession, custody or control of any such items.  However, we have inquired as to whether any information was provided during the interviews indicating that the FBI or USAO was advised of the allegation prior to August 1, 2007, and were informed that no such information was provided.

b.   We are not in possession, custody or control of any such items.  However, we have inquired as to whether any information was provided during the interviews indicating that the FBI or USAO was advised of the allegation prior to August 1, 2007, and were informed that no such information was provided.

c.   We are not in possession, custody or control of any such items.

d.   We are not in possession, custody or control of any such items.

e.   We are unsure of the meaning of this request, and have interpreted it to request emails, notes or memoranda prepared by the U.S. Attorney's Office which address being notified of the allegation.  Such items are privileged.  In any case, we have conducted a review and there is no such item reflecting notice of the allegation prior to August 1, 2007.

f.  Pursuant to subpoena of the BOP, we have obtained an item responsive to this request, and have determined it does not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of this item to the Court for <u>in camera</u> review.

g.  Pursuant to subpoena of the BOP, we have obtained items responsive to this request, and have determined that they do not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of these items to the Court for <u>in camera</u> review.

h.  Pursuant to subpoena of the BOP, we have obtained items responsive to this request, and have determined that they do not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of these items to the Court for <u>in camera</u> review.

i.  Pursuant to subpoena of the BOP, we have obtained items responsive to this request, and have determined that they do not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of these items to the Court for <u>in camera</u> review.

j.  Pursuant to subpoena of the BOP, we have obtained items responsive to this request, and have determined that they do not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of these items to the Court for <u>in camera</u> review.

k.  Pursuant to subpoena of the BOP, we have obtained items responsive to this request, and have determined that they do not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of these items to the Court for <u>in camera</u> review.

l.  We are not in possession, custody or control of any such items.  We note also that the request covers a time period post-dating the <u>Basciano</u> verdict.

3

m.  We are not in possession, custody or control of any such items.  We note also that the request covers a time period post-dating the <u>Basciano</u> verdict.

n.  We are not in possession, custody or control of any such items.  We note also that the request covers a time period post-dating the <u>Basciano</u> verdict.

o.  We are not in possession, custody or control of any such items.

p.  With respect to the part of this request seeking "reports of any investigation of criminal activity" by Cicale, such documents are privileged and are otherwise not subject to discovery, except that appropriate and full disclosures have already been made in compliance with the government's <u>Brady</u> and <u>Giglio</u> obligations.  With respect to the remainder of the request, we do not have possession, custody or control of any such items.  In this regard, as you have been informed, these matters were not referred to the FBI or the USAO.

q.  We do not have possession, custody or control of any such items.  As previously disclosed to the Court and the defendant, the government became aware of the false murder plot allegation in August 2007.

r.  CW-1 first advised someone in the USAO of the false murder plot allegation in August 2007.  During subsequent inquiry, CW-1 advised someone in the USAO about an incident in the kitchen of the PCU.

s.  We do not have possession, custody or control of any such items.

t.  We are uncertain as to the meaning of this request.  We interpret it for purposes of this response as a request for information about any direction the USAO gave to the BOP about investigating the allegations described in your request.  The USAO did not give the BOP any direction about investigation of these matters.  The USAO did subpoena certain information in regard to these allegations, conducted certain interviews and received affidavits from BOP employees, which affidavits have been disclosed pursuant to protective order.

u.  We do not understand this request.  If you could kindly clarify its meaning, we will endeavor to respond.

v.   We do not have possession, custody or control of any such items.

w.   These items are subject to restrictions governing the Witness Security program.  In any case, such items are not relevant.  We do note that Cicale remained at the MCC through the completion of his testimony in the <u>Basciano</u> trial.

x.   These items are not discoverable.  They are grand jury items and are otherwise privileged.

<u>November 27, 2007 Letter</u>

30.   As to documents, pursuant to subpoena of the BOP, we have obtained items responsive to this request, and have determined they do not contain any <u>Giglio</u> or <u>Brady</u> material beyond the information you have already been provided.  We are, however, in an abundance of caution providing a copy of this item to the Court for <u>in camera</u> review.  As to interviews, it is our understanding that those individuals decline to be interviewed, and/or that the defendant has not made a satisfactory <u>Touhy</u> showing (<u>e.g.</u>, as to the Warden and others).

31.   Beyond the assault incident at Putnam County disclosed in the <u>Basciano</u> trial, and the false murder plot allegation the USAO and FBI learned of in August 2007, we are unaware of any other misconduct or alleged misconduct of Cicale.  The defendant's specific sub-requests are addressed below:

    (a)   Addressed above.
    (b)   None.
    (c)   Not discoverable, though we are unaware of any.
    (d)   Cicale has denied the false murder plot allegation.
    (e)   Cicale continues to be a cooperating witness, and the allegations had no effect on his removal during or after the '03 trial.
    (f)   Not discoverable, though no one other than CW-1 has indicated that they were present when Cicale allegedly sought to recruit CW-1 for the false murder plot allegation.

32. We are not in possession, custody or control of any such item. We have, however, inquired as to whether there is any indication that the USAO or FBI was advised of the false murder plot allegation prior to August 1, 2007, and have not learned of any such information.

33. We are not in possession, custody or control of any such item.

34. We are not in possession, custody or control of any such item.

> Respectfully submitted,
>
> ROSLYNN R. MAUSKOPF
> UNITED STATES ATTORNEY
>
>
> By: ___/S/_____
> John Buretta
> Amy Busa
> Assistant U.S. Attorneys

cc: Clerk of Court (NGG) (by ECF)



**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

JDB:JAG
F.#2005R00060                    *271 Cadman Plaza East*
                                 *Brooklyn, New York 11201*


                                 February 26, 2008


VIA ELECTRONIC FILING
All Defense Counsel

          Re:  United States v. Mancuso, et al.
               Criminal Docket No. 05-060 (NGG)

Dear Counsel:

          The government writes in response to your February 19,
2008 letter, in which co-defendants (Anthony Indelicato, Anthony
Aiello, and Anthony Donato) purportedly join. (See 2/19/03 Let.
at 8). In your letter, you make various demands for the
disclosure of documents and other information related to
allegations that cooperating witness Dominick Cicale asked
another inmate to participate in a false murder plot in regard to
Vincent Basciano, another co-defendant whose trial has been
severed.  You also recognize that much (if not all) of what you
request has already been demanded by Basciano, in his letters
dated November 27, 2007, and January 17, 2008. (See 2/19/03 Let.
at 1-2).  On February 15, 2008, the government addressed
Basciano's letters, noting that we had already made the
appropriate disclosures in compliance with Brady v. Maryland, 373
U.S. 83 (1963), and Giglio v. United States, 405 U.S. 150 (1972),
as well as additional disclosures that go well beyond these
requirements. With one exception (set forth below), we see
nothing in your recent correspondence that requires comment
beyond our comprehensive February 15 letter.

          In Basciano's January 17, 2008 letter, he requested, in
item (u), "[a]ny advice to any defendant that CW-1 testified
against or FBI related testimony that CW-1's testimony was
untruthful."  The government was unable to respond to the request
as worded, and invited clarification.  In your recent letter, you
adopt Basciano's item (u), and construe it to seek information
concerning instances in which the government might have taken the
position that "CW-1" was not truthful in regard to the
allegation. ( See 2/19/03 Let. at 5 n.5).  The only responsive
information in that regard is as follows:  the government has
made a disclosure that CW-1 has made allegations regarding Cicale

and Santomaggio, and that Cicale and Santomaggio have separately
denied the respective allegations.

        Pursuant to the Court's direction, we have endeavored
to respond to your letter expeditiously, in light of the March 17
pretrial motion deadline.

                        Very truly yours,

                        BENTON J. CAMPBELL
                        United States Attorney

By:  /s/ Jeffrey A. Goldberg
     Jeffrey A. Goldberg
     Deborah S. Mayer
     Nicole M. Argentieri
     Assistant U.S. Attorneys
     (718) 254-7579/6241/6232

cc:  Clerk of the Court (NGG) (via ECF)

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2   - - - - - - - - - - - - - X
     UNITED STATES OF AMERICA,          : 05-CR-0060(NGG)
 3                                       :
                                         :
 4                                       : United States Courthouse
     -against-                           : Brooklyn, New York
 5                                       :
                                         :
 6                                       :
     ANTHONY DONATO,                     : August 6, 2008
 7               Defendant.              : 3:30 p.m.
     - - - - - - - - - - - - - X
 8

 9

10              CRIMINAL CAUSE FOR PLEADING
         BEFORE THE HONORABLE NICHOLAS G. GARAUFIS
11           UNITED STATES DISTRICT COURT JUDGE

12                       - - -

13            A P P E A R A N C E S :

14   For the Government:         United States Attorneys Office
                                 Eastern District of New York
15                               271 Cadman Plaza East
                                 Brooklyn, New York  11201
16                               BY:   TARYN MERKL, ESQ.
                                 BY:   NICOLE ARGENTIERI, ESQ.
17                               BY:   JEFFREY GOLDBERG, ESQ.

18   For the Defendant:          MAURICE SERCARZ, ESQ.
                                 Sercarz & Riopelle
19                               152 W. 57th, 24th Floor
                                 New York, NY  10019
20

21

22   Court Reporter:            Nicole M. Warren, CSR, RMR, CRR
                                Official Court Reporter
23                              Telephone:  (718)613-2599

24   Proceedings recorded by computerized stenography
     Transcript produced by Computer-aided Transcription.
25
```

Nicole M. Warren, CSR, RMR, CRR

```
 1              (On the record in open court; Defendant is present.)

 2         THE COURT:  All right.  United States of America

 3    against Anthony Donato.

 4         MR. GOLDBERG:  Jeffrey Goldberg, Taryn Merkl, and

 5    Nicole Argentieri for the Government.

 6         Good afternoon, your Honor.

 7         MR. SERCARZ:  For Defendant Donato, Maurice Sercarz,

 8    S-e-r-c-a-r-z.

 9         Good afternoon, your Honor.

10         THE COURT:  Good afternoon.

11         Good afternoon, Mr. Donato.

12         THE DEFENDANT:  Good afternoon.

13         THE COURT:  Mr. Sercarz, I understand that your client

14    wishes to withdraw his previously entered plea of not guilty to

15    Count Six of the indictment in United States versus Vincent

16    Basciano, et al, 05-CR-60 and to enter a plea of guilty to

17    Count Six.

18         MR. SERCARZ:  That's correct; in full satisfaction of

19    the charges in that indictment, your Honor.

20         THE COURT:  Very well.

21         MR. SERCARZ:  And subject to the plea agreement before

22    the Court.

23         THE COURT:  Very well.  And I have the plea agreement

24    here.  Very well.

25         Mr. Donato, your attorney advises you wish to plead
```

```
 1    guilty to Count Six of the superceding indictment in which you
 2    are charged.  This is (S-9)?
 3             Is this (S-9)?
 4             MR. GOLDBERG:  Yes, your Honor.
 5             MR. SERCARZ:  Yes.
 6             THE COURT:  In 05-CR-60.
 7             This is a serious decision, and I must be certain you
 8    make it understanding your rights and the consequences of your
 9    plea.  I am going to explain certain rights to you and then ask
10    you questions, and I want your answers to be under oath.
11             The deputy clerk will swear you in.
12             COURTROOM DEPUTY:  Raise your right hand, please.
13             (Defendant Donato is sworn.)
14             COURTROOM DEPUTY:  Thank you.
15             THE COURT:  Mr. Donato, you understand that, having
16    been sworn to tell the truth, you must do so.  If you were to
17    deliberately lie in response to any question I ask you, you
18    face further criminal charges for perjury.
19             Is that clear?
20             THE DEFENDANT:  Yes.
21             THE COURT:  If I say anything that you do not
22    understand or if you need me to repeat anything, you have only
23    to ask.  It is important that you understand everything that
24    goes on in these proceedings.
25             Is that clear?
```

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  Mr. Donato, how old are you?

 3              THE DEFENDANT:  Fifty.

 4              THE COURT:  How far did you get with your education?

 5              THE DEFENDANT:  Two years of college.

 6              THE COURT:  Where'd you go to college?

 7              THE DEFENDANT:  Iona College.

 8              THE COURT:  Okay.  And are you a U.S. citizen?

 9              THE DEFENDANT:  Yes.

10              THE COURT:  All right.  And is English your primary

11  language?

12              THE DEFENDANT:  Yes, it is.

13              THE COURT:  Mr. Sercarz, have you had any difficulty

14  communicating with your client in English?

15              MR. SERCARZ:  No, your Honor.

16              THE COURT:  All right.  Mr. Donato, I must be certain

17  that whatever decision you make today you make with a clear

18  head.  So, I'm going to ask you some questions about your

19  health.

20              Are you currently or have you recently been under the

21  care of a doctor or a psychiatrist for any reason?

22              THE DEFENDANT:  No, sir.

23              THE COURT:  In the past 24 hours have you taken any

24  pills or drugs or medicine of any kind?

25              THE DEFENDANT:  Yes, sir.
```

```
 1              THE COURT:  What'd you take?

 2              THE DEFENDANT:  Zocor.

 3              THE COURT:  What's that for?

 4              THE DEFENDANT:  For the cholesterol.

 5              THE COURT:  The cholesterol medicine.  Does that

 6   affect your ability to think or reason?

 7              THE DEFENDANT:  Not at all.

 8              THE COURT:  In the past 24 hours have you drunk any

 9   alcoholic beverages?

10              THE DEFENDANT:  No, sir.

11              THE COURT:  All right.  Have you ever been

12   hospitalized or treated for any drug-related problem?

13              THE DEFENDANT:  No, sir.

14              THE COURT:  Is your mind clear as you stand here

15   today?

16              THE DEFENDANT:  Yes, it is.

17              THE COURT:  Do you understand everything being said to

18   you?

19              THE DEFENDANT:  Yes.

20              THE COURT:  Okay.  Mr. Sercarz, have you discussed the

21   question of a guilty plea with your client?

22              MR. SERCARZ:  I have, your Honor.

23              THE COURT:  In your view does he understand the rights

24   he would be waiving by pleading guilty?

25              MR. SERCARZ:  Yes, your Honor.
```

Case 1:05-cr-00060-NGG Document 1382-2 Filed 07/16/15 Page 66 of 84 PageID #: 24559
Case 2:09-cv-00060-NGG Document 1342 Filed 07/16/15 Page 66 of 84 PageID #: 159

6

```
 1              THE COURT:  Do you have any question as to your
 2   client's competence to plead today?
 3              MR. SERCARZ:  No, your Honor.
 4              THE COURT:  And you're appointed?
 5              MR. SERCARZ:  Your Honor, I was retained.  The Court
 6   has signed an order appointing me.
 7              THE COURT:  Right.  I know.  You're now appointed.
 8              MR. SERCARZ:  Yes.
 9              THE COURT:  Very well.  All right.
10              Mr. Donato, your attorney was appointed by the Court
11   to represent you in this case.  He is an experienced criminal
12   defense lawyer.  Are you satisfied with the assistance your
13   lawyer has given you thus far in this matter?
14              THE DEFENDANT:  Yes, I am.
15              THE COURT:  Do you feel you need anymore time to
16   discuss with him the question of a guilty plea?
17              THE DEFENDANT:  No.
18              THE COURT:  Very well.  Now, you are pleading guilty
19   to Count Six of the superceding indictment (S-9) in 05-CR-60.
20   Count Six charges you with conspiracy to commit murder in aid
21   of racketeering.
22              I'm going to ask the Government to set forth the
23   charge in Count Six and to state the elements of the crime that
24   the Government would have to prove to a jury unanimously and
25   beyond a reasonable doubt to convict you of the crime charged
```

1   in Count Six.

2        MR. GOLDBERG:  Count Six charges conspiracy to murder

3   Frank Santoro in aid of racketeering.

4        If this matter were to proceed to trial, the

5   Government would prove the existence of an enterprise charged

6   in the indictment; an enterprise that affects interstate or

7   foreign commerce; and that the defendant agreed with others to

8   commit murder, the murder of Frank Santoro, for the purpose of

9   gaining entrance to or maintaining or increasing his position

10   in the charged enterprise.

11        THE COURT:  Do you understand the charge in Count Six

12   of the indictment?

13        THE DEFENDANT:  Yes, I do.

14        THE COURT:  And do you understand the elements of the

15   crime the Government would be obligated to prove to a jury

16   beyond a reasonable doubt and unanimously in order to convict

17   you of this crime at a trial?

18        THE DEFENDANT:  Yes, I do.

19        THE COURT:  You have certain rights.  I'm going to go

20   over your rights with you.  Please listen carefully to your

21   rights.

22        You have the right to plead not guilty to this charge.

23   No one can be forced to plead guilty.

24        Do you understand that?

25        THE DEFENDANT:  Yes.

```
1              THE COURT:  If you plead guilty to this charge -- I'm
2    sorry.
3              If you plead not guilty to this charge or if you
4    persist in a plea of not guilty, you have a right under the
5    Constitution and laws of the United States to a speedy and
6    public trial before a jury with the assistance of your
7    attorney.
8              Do you understand that?
9              THE DEFENDANT:  Yes.
10             THE COURT:  At any trial you would be presumed to be
11   innocent.  You would not have to prove that you were innocent.
12   This is because under our system of law it is the Government
13   that must come forward with proof that establishes beyond a
14   reasonable doubt that you are guilty of the crime charged.  If
15   the Government failed to meet this burden of proof, the jury
16   would have the duty to find you not guilty.
17             Do you understand that?
18             THE DEFENDANT:  Yes.
19             THE COURT:  In the course of a trial witnesses for the
20   Government would have to come here to court and testify in your
21   presence.  Your attorney would have the right to cross-examine
22   these witnesses.  He could raise legal objections to evidence
23   that the Government sought to offer against you.  He could
24   offer evidence in your behalf if you thought there was evidence
25   that might help you in this case.
```

1    Do you understand that?

2    THE DEFENDANT:  Yes.

3    THE COURT:  At a trial you would have the right to

4    testify in your own behalf if you wished to do so.  On the

5    other hand you could not be forced to be a witness at your

6    trial.  This is because under the Constitution and laws of the

7    United States no person can be compelled to be a witness

8    against himself.

9    If you wished to go to trial but chose not to testify,

10   I would instruct the jury that they could not hold that against

11   you.

12   Do you understand that?

13   THE DEFENDANT:  Yes.

14   THE COURT:  If instead of going to trial you plead

15   guilty to the crime charged and if I accept your guilty plea,

16   you will be giving up your right to a trial and all the other

17   rights I have just discussed.

18   There will be no trial in this case as far as you are

19   concerned.  There will be no appeal on the question of whether

20   you did or did not commit this crime.  The only thing you could

21   appeal with be if you thought I did not properly follow the law

22   in sentencing you.  Otherwise, I will simply enter a judgment

23   of guilty based upon your plea of guilty.

24   Do you understand that?

25   THE DEFENDANT:  Yes.

Nicole M. Warren, CSR, RMR, CRR

```
 1              THE COURT:  If you do plead guilty, I will have to ask
 2   you certain questions about what you did in order to satisfy
 3   myself that you are guilty of the charge.  You'll have to
 4   answer my questions and acknowledge your guilt.  If you do
 5   this, you will be giving up your right not to incriminate
 6   yourself.
 7              Do you understand?
 8              THE DEFENDANT:  Yes, sir.
 9              THE COURT:  All right.  Mr. Donato, are you willing to
10   give up your right to a trial and the other rights I've just
11   discussed with you?
12              THE DEFENDANT:  Yes, sir.
13              THE COURT:  Okay.  I have a plea agreement in United
14   States of America against Anthony Donato in 03-CR-929 (S-3) and
15   05-CR-060 (S-9).  It is marked as Court's Exhibit No. 1; it is
16   dated August 6, 2008; and it consists of eight pages.
17              I'm going to hand it to the defendant and his attorney
18   and ask some questions.
19              Mr. Donato, have you read this agreement?
20              THE DEFENDANT:  Yes, I did.
21              THE COURT:  Have you discussed it with your attorney?
22              THE DEFENDANT:  Yes, I did.
23              THE COURT:  Has he answered any and all questions that
24   you had about it?
25              THE DEFENDANT:  Yes, he has.
```

```
 1              THE COURT:  And you understand your rights and your
 2    obligations under this agreement?
 3              THE DEFENDANT:  Yes, I do.
 4              THE COURT:  Mr. Sercarz, are you satisfied that your
 5    client understands his rights and his obligations under this
 6    agreement?
 7              MR. SERCARZ:  Yes, your Honor.
 8              THE COURT:  Very well.
 9              Please turn to page 8 of the agreement.
10              THE DEFENDANT:  (Complies.)
11              THE COURT:  Mr. Donato, is that your signature by your
12    name?
13              THE DEFENDANT:  Yes, it is.
14              THE COURT:  Did you sign the agreement today?
15              THE DEFENDANT:  Yes.
16              THE COURT:  Mr. Sercarz, have you executed the
17    agreement?
18              MR. SERCARZ:  I have.
19              THE COURT:  And the Government has also executed the
20    agreement?
21              MR. GOLDBERG:  Yes, your Honor.
22              THE COURT:  Very well.  Please return the agreement to
23    me.
24              THE DEFENDANT:  (Complies.)
25              THE COURT:  Thank you.
```

Nicole M. Warren, CSR, RMR, CRR

```
 1          Now, I'm going to go over the statutory penalties that
 2   apply to Count Six of the indictment; and then we're going to
 3   go over the other issue which is involved in determining the
 4   ultimate sentence.
 5          And I'll let you describe that issue --
 6          MR. GOLDBERG:  Yes, your Honor.
 7          THE COURT:  -- under 11(c)(1)(C).
 8          MR. GOLDBERG:  There's also, if I may, your Honor, if
 9   you want to take this in turn, the issues set forth in
10   paragraph one which is the appeal waiver and an acknowledgment
11   of guilt.
12          THE COURT:  Okay.  Let me go over the statutory
13   penalties first, and then I'll go over the rest.
14          By pleading guilty today to Count Six of the
15   superceding indictment in 05-CR-60, there is a statutory -- the
16   following statutory penalty:
17          There's a maximum term of imprisonment of ten years.
18          There's a minimum term of imprisonment -- there is no
19   minimum.
20          The maximum supervised release term is three years
21   which would follow any term of imprisonment.
22          If you violate a condition of your release, you could
23   be sentenced to up to two years in jail without credit for
24   prerelease imprisonment or time previously served on
25   post-release supervision.
```

Nicole M. Warren, CSR, RMR, CRR

```
1           The maximum fine is $250,000.
2           Restitution will be determined by the Court.
3           There is a 100-dollar special assessment which is
4   mandatory.
5           Do you understand those statutory penalties?
6           THE DEFENDANT:  Yes, sir.
7           THE COURT:  Now, under this plea agreement as a part
8   of this plea agreement you also agree that you acknowledge your
9   guilt with respect to the charges to which you pleaded guilty
10  previously in Counts One and Two of United States against
11  Joseph Massino, 03-CR-929 (S-3) which charged -- Count One
12  charged you with racketeering conspiracy involving predicate
13  acts of attempted murder and gambling involving Joker Poker
14  machines.
15          And Count Two charged illegal gambling involving Joker
16  Poker machines.
17          As part of this agreement you acknowledge your guilt
18  with respect to those charges once again, and you agree not to
19  challenge those convictions on appeal or by collateral attack
20  by petition pursuant to 28 United States Code Section 2255 or
21  by any other provision.
22          Do you understand and agree to that?
23          THE DEFENDANT:  Yes.
24          THE COURT:  Okay.  Third, pursuant to paragraph three
25  of this agreement, you and the Government agree that a sentence
```

1    of 25 years of imprisonment is the appropriate disposition of

2    the above-captioned cases, meaning both the 03 and the 05

3    cases.

4           Specifically, pursuant to Rule 11(c)(1)(C) of the

5    Federal Rules of Criminal Procedure, you and the Government

6    agree that a sentence of 25 years is the appropriate

7    disposition of Indictment No. 03-CR-929 (S-3) and that a

8    concurrent sentence of ten years is the appropriate disposition

9    of Indictment No. 05-CR-60 (S-9).

10          Is that your understanding?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  Anything else about that?

13          MR. GOLDBERG:  No, your Honor.

14          THE COURT:  Of course, if the Court rejects your plea

15   agreement -- if the Government rejects the plea agreement, the

16   Government has the right to vacate the plea in the 05-CR-60

17   case.

18          Is that right?

19          MR. GOLDBERG:  I think it's actually if the Court

20   rejects the plea agreement.

21          THE COURT:  Did I say the Government?

22          MR. GOLDBERG:  I think you may have, Judge.

23          THE COURT:  I meant the Court.

24          MR. GOLDBERG:  I know you did, Judge.  Just correcting

25   the record.

```
 1              THE COURT:  Most certainly.

 2              Yes?

 3              MR. SERCARZ:  I believe it's the nature of the

 4    agreement that the defendant would also have the right, your

 5    Honor, to withdraw his plea to this indictment --

 6              MR. GOLDBERG:  That's correct.  I was just about to

 7    say that.

 8              MR. SERCARZ:  -- pursuant to Rule 11(c)(5), your

 9    Honor.

10              THE COURT:  Right.

11              MR. SERCARZ:  Thank you.

12              THE COURT:  And according to -- right.

13              Rule 11(c)(5), the defendant could withdraw his plea

14    to the 05 charge --

15              MR. SERCARZ:  Yes, your Honor.

16              THE COURT:  -- at that point.  It's unlikely that the

17    Court would reject it.

18              MR. SERCARZ:  Understood.

19              THE COURT:  However, the Court has to see the

20    presentence report before making a final decision on anything

21    like this, frankly.

22              Now, in sentencing you I think you know, having gone

23    through this, I'm required to take into consideration a number

24    of things about you and about the crime to which you are

25    pleading guilty.  When I do that, I will be directed to a
```

```
 1   guideline that will provide a sentencing range.

 2              Did you give a -- have you provided a --

 3              MR. GOLDBERG:  I don't believe we have, Judge,

 4   because --

 5              THE COURT:  -- prediction because of the 11(c)(1)(C)?

 6              MR. GOLDBERG:  Correct.  And also because of the

 7   maximum ten years on the count to which he's pleading guilty.

 8              THE COURT:  Right.  And do you think there's a need to

 9   go over the sentence process at this point?

10              MR. GOLDBERG:  No, your Honor.

11              THE COURT:  Let me do it anyway.

12              I'll do it briefly.

13              Have you gone over sentencing with your attorney?

14              THE DEFENDANT:  Yes, I have.

15              THE COURT:  Do you understand how the sentencing

16   process works?

17              THE DEFENDANT:  Yes.

18              THE COURT:  I'm obligated to determine a guideline.

19   The appellate courts require me to do it, and I'm going to do

20   it.  The presentence report will have a calculation of the

21   sentencing guideline for this case, and I'm required to

22   carefully consider the guideline recommendation among other

23   things in deciding what would constitute a reasonable sentence

24   in your case.

25              In view of the fact that you have reached an agreement
```

1  with the Government as to what the appropriate sentence should

2  be, while I am required to consider the guideline range, I will

3  also carefully consider the meeting of the minds as to the

4  sentence to which you have worked out between the defense and

5  the Government.  Should I determine that that appears to be a

6  reasonable sentence, I will simply impose that sentence.

7        I cannot tell you today what the guideline range will

8  be, I cannot tell you today what sentence I will impose, but I

9  can tell you that I will carefully consider the report of the

10  probation department in deciding what sentence I should impose.

11        You must understand that no one can make any promise

12  to you as to the sentence I will impose.  While your attorney

13  and the prosecutor may have made predictions, may have an

14  agreement about the sentence I should impose, I will -- and I

15  will listen carefully to whatever they say, you must clearly

16  understand that the final responsibility for sentencing you is

17  mine alone.

18        So, while I may view this case identically to the

19  attorneys, I may also view the case differently.  If so, I may

20  not impose the sentence that they have predicted or recommended

21  or agreed to.

22        Even if I sentence you differently from what the

23  attorneys or anyone else has estimated or predicted with one

24  major exception, you would still be bound by your guilty plea.

25  Obviously, the major exception is if it's anything more than 25

```
 1   years, you have the right to withdraw your plea.

 2          Do you understand that?

 3          THE DEFENDANT:  Yes, sir.

 4          MR. GOLDBERG:  Your Honor, just to be clear -- and

 5   it's in the agreement -- it's only right to withdraw the plea

 6   on the 05-CR-060.

 7          THE COURT:  Right.  That's the only plea I'm taking.

 8          MR. GOLDBERG:  That's correct.

 9          THE COURT:  Do you understand that?  The other plea is

10   in place and done.  Do you understand that?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  If after I impose sentence you and your

13   attorney think I have not properly followed the law in

14   sentencing you, you have the right to appeal your sentence to

15   the United States Court of Appeals for the Second Circuit.

16          Do you understand that?

17          THE DEFENDANT:  Yes, sir.

18          THE COURT:  Anything else on sentencing?

19          MR. GOLDBERG:  Not from the Government, your Honor.

20          THE COURT:  Anything else on sentencing?

21          MR. SERCARZ:  No, thank you.

22          THE COURT:  Okay.  All right.  Mr. Donato, do you have

23   any questions you'd like to ask me about the charge, your

24   rights, or anything else related to this matter that may not be

25   clear?
```

Nicole M. Warren, CSR, RMR, CRR

```
 1              THE DEFENDANT:  No, sir.

 2              THE COURT:  Okay.  Mr. Sercarz, is there anything you

 3    would like me to discuss with your client in further detail

 4    before I proceed to formal allocution?

 5              MR. SERCARZ:  No, your Honor.

 6              THE COURT:  Do you know of any reason why your client

 7    should not enter a plea of guilty to Count Six?

 8              MR. SERCARZ:  No, your Honor.

 9              THE COURT:  Are you aware of any viable legal defense

10    to the charge?

11              MR. SERCARZ:  No, your Honor.

12              THE COURT:  All right.  Mr. Donato, are you ready to

13    plead?

14              THE DEFENDANT:  Yes, sir.

15              THE COURT:  All right.  How do you plea to the charge

16    contained in Count Six of the Superceding Indictment (S-9) in

17    05-CR-60, guilty or not guilty?

18              THE DEFENDANT:  Guilty.

19              THE COURT:  Are you making this plea of guilty

20    voluntarily and of your own free will?

21              THE DEFENDANT:  Yes, I am.

22              THE COURT:  Has anyone threatened or forced you to

23    plead guilty?

24              THE DEFENDANT:  No.

25              THE COURT:  Other than the agreement with the
```

1  Government, has anyone made you any promise that caused you to

2  plead guilty?

3          THE DEFENDANT:  No.

4          THE COURT:  Has anyone made you any promise about the

5  sentence you will receive?

6          THE DEFENDANT:  No.

7          THE COURT:  Okay.  All right.  What I'd like you to do

8  now is tell me in your own words what you did to commit the

9  crime charged in Count Six which is conspiracy to commit murder

10  in aid of racketeering.

11          If you're going to read your allocution, just read it

12  slowly.

13          MR. SERCARZ:  The defendant is, your Honor; and at the

14  beginning in accordance with the agreement there is a prefatory

15  comment that he'll be making with regard to the earlier guilty

16  plea that he took before the Court, just to alert you.

17          THE COURT:  Very well.  Thank you so much.

18          Go ahead, please, sir.

19          THE DEFENDANT:  From the top?

20          MR. SERCARZ:  Yep.

21          THE COURT:  Just loud and clear, please.

22          THE DEFENDANT:  Yes, sir.

23          On November 8th, 2005, I entered a plea of guilty

24  before your Honor to charges contained in Indictment 03-CR-929.

25  Specifically, I entered a plea of guilty to Count One of the

```
 1   indictment alleging that I conspired to engage in racketeering;

 2   and in Count Two of the indictment I pled guilty to charges of

 3   illegal gambling under Federal law.

 4          Pursuant to my plea agreement with the Government, I

 5   again acknowledge my guilt of those crimes.

 6          In connection with the indictment presently before the

 7   Court, 05-CR-060, I admit that in February of 2001 I knowingly

 8   and intentionally agreed with others to murder Frank Santoro

 9   for the purpose of maintaining and increasing my position in

10   the enterprise.  That enterprise engaged in criminal activity

11   in the Eastern District of New York.  It also affected

12   interstate commerce.

13          THE COURT:  All right.  Is it the enterprise that was

14   charged in the indictment?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Anything else from the Government?  Any

17   questions?

18          (Discussion between Mr. Sercarz and Mr. Goldberg; off

19   the record.)

20          THE DEFENDANT:  Pursuant to my plea agreement, I

21   stipulate that I participated in the murder of Frank Santoro.

22          MR. GOLDBERG:  Thank you, your Honor.

23          THE COURT:  As to venue?

24          MR. GOLDBERG:  It's the enterprise operating in the

25   Eastern District of New York.  I think the defendant said it.
```

1    Thank you.

2              THE COURT:  All right.  Just double-checking.

3              MR. GOLDBERG:  Thank you.

4              THE COURT:  All right.  All right.  Now, based on the

5    information that you have given to me, Mr. Donato, I find that

6    you are acting voluntarily; that you fully understand the

7    charge, your rights, and the consequences of your plea.  There

8    is, moreover, a factual basis for your plea.

9              Therefore, I accept your plea of guilty to Count Six

10   of the Superceding Indictment (S-9) in 05-CR-60 and I'm

11   accepting this plea subject to the, as we said earlier,

12   the -- all of the defendants -- well, four of the

13   defendants.  There's only one defendant left who hasn't pleaded

14   yet.  That's Mr. Aiello but subject to all of the defendants

15   pleading guilty by the end of the week but the end of the week

16   is tomorrow.  It's not Friday, as far as I'm concerned.

17             Do you understand that?

18             THE DEFENDANT:  Yes, sir.

19             THE COURT:  Doesn't affect you except Mr. Aiello

20   doesn't plead.

21             THE DEFENDANT:  Right.

22             THE COURT:  I'm going to set a sentencing for you on

23   Friday, November 21st, 2008, at 11:00 a.m.

24             That's Friday -- got that?  Friday November 21st,

25   2008, 11:00 a.m. for sentencing.

Nicole M. Warren, CSR, RMR, CRR

```
 1          You're going to be contacted by a probation officer
 2   for a presentence interview.  Please provide the probation
 3   officer with all the information he or she needs.  Mr. Sercarz
 4   will want to be present for that interview.  If when you
 5   receive the report and review it you -- with Mr. Sercarz you
 6   find that there's anything that's a mistake or an error or if
 7   there is anything you want me to know about you that's not in
 8   the report, provide that information to Mr. Sercarz.  He'll
 9   provide it to --
10          THE DEFENDANT:  I already had it done on the first
11   case, your Honor.
12          THE COURT:  So, you've been through this.
13          THE DEFENDANT:  Yeah.
14          THE COURT:  I'm just repeating it because I'm supposed
15   to.
16          Provide it to Mr. Sercarz, and I'll consider it.
17   Okay?
18          THE DEFENDANT:  Thank you.
19          THE COURT:  Do you have any questions?
20          THE DEFENDANT:  No, sir.
21          THE COURT:  Very good.
22          Anything else from the Government?
23          MR. GOLDBERG:  No, your Honor.
24          THE COURT:  Mr. Sercarz, anything else from you?
25          MR. SERCARZ:  May I have a moment, your Honor?
```

```
1              THE COURT:  Sure.

2              Go ahead.  I'll wait.

3              MR. SERCARZ:  I'm sorry.

4              THE COURT:  It's not a problem.

5              (Discussion between Mr. Sercarz and the defendant; off

6    the record.)

7              THE COURT:  Is there anything else from you,

8    Mr. Sercarz?

9              MR. SERCARZ:  No, thank you, your Honor.

10             THE COURT:  I'm returning the plea agreement to the

11   Government and requesting a photostatic copy for the Court.

12             Thank you.  Have a nice day.

13             (Whereupon the proceedings adjourned to November 21,

14   2008.)

15

16

17

18

19

20

21

22

23

24

25
```

Nicole M. Warren, CSR, RMR, CRR