UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
────────────────────────────────
UNITED STATES OF AMERICA,

-against-

ANTHONY DONATO,

Defendant.
────────────────────────────────

MEMORANDUM & ORDER
03-CR-929 and
05-CR-060 (NGG)

NICHOLAS G. GARAUFIS, United States District Judge.

Defendant Anthony Donato brings this second motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), as amended by the First Step Act of 2018. (Second Mot. for Reduction (Dkt. 1528)[1]; *see also* Government Response in Opposition ("Opp.") (Dkt. 1534); Reply (Dkt. 1538).) For the reasons set forth below, the court finds that Mr. Donato has demonstrated extraordinary and compelling reasons warranting a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i). And in consulting the relevant factors pursuant to 18 U.S.C. § 3553(a), the court finds that a sentence of time served, followed by a period of supervised release for two years, is sufficient but not greater than necessary to comply with the goals of federal sentencing. Mr. Donato's motion for a reduction in sentence is therefore GRANTED.

I.   BACKGROUND

   A.   Criminal Conduct and Sentencing

Between January 1979 until his arrest in November 2004, Mr. Donato participated in illegal gambling operations as a member of the Bonnano organized crime family. (Presentence Investigation Report ("PSR") (Dkt. 1415) ¶¶ 2, 3, 49, 55-59, 66.) For conduct connected to his role in the Bonnano Family, Mr. Donato

---

[1] Unless otherwise noted, citations to docket entries refer to the entries in *United States v. Donato*, 5-CR-60 rather than the entries in *United States v. Donato*, 3-CR-929.

1

pleaded guilty on November 8, 2005 to two counts: (1) illegal gambling and (2) racketeering conspiracy predicated on attempted murder and owning and operating gambling businesses, in violation of 18 U.S.C. §§ 1955, 1962(d), and 1963(a). (*See* Superseding Indictment S-3 (Dkt. 220 in No. 3-CR-929); November 8, 2005 Min. Entry (Dkt. 375 in No. 3-CR-929); PSR ¶¶ 1-4, 66-69.) On August 6, 2008, Mr. Donato pleaded guilty to conspiracy to commit murder in aid of racketeering in violation of 18 U.S.C. § 1959(a)(5). (*See* Superseding Indictment S-9 (Dkt. 464); Aug. 6, 2008 Min. Entry (Dkt. 509); PSR ¶¶ 5-7, 33-34.) Mr. Donato was then sentenced by this court to a 300-month (25 year) term of imprisonment plus three years of supervised release. (Judgment (Dkt. 583).) The sentence was specified in Mr. Donato's plea agreement which was made under Federal Rule of Criminal Procedure 11(c)(1)(C). (PSR ¶ 7.)

### B.   Compassionate Release Motions and Transfer to Bronx RRC

In May 2020, after serving approximately 15 years in custody, Mr. Donato filed his first of two motions for compassionate release, focusing on prison conditions at FCI Danbury during the COVID-19 pandemic. (First Mot. for Reduction (Dkt. 1481).) The court denied that motion because Mr. Donato could not demonstrate that the prison conditions created extraordinary and compelling reasons warranting his release. (M&O Denying First Mot. for Reduction (Dkt. 1484) at 4.) *See also United States v. Donato*, No. 03-CR-929 (NGG), 2020 WL 3642854, at *2 (E.D.N.Y. July 6, 2020), aff'd, 848 F. App'x 485 (2d Cir. 2021).

Mr. Donato filed the instant second motion for compassionate release in July 2022. (Second Mot. for Reduction.) Mr. Donato argues in this motion that four sets of circumstances, when viewed together, create extraordinary and compelling reasons that warrant a reduction in his sentence to time served. These

include conditions relating to (1) the sentencing disparity between Mr. Donato and his co-defendants; (2) his family circumstances, in particular the need to take part in the care of his son, Anthony Jr., who has Down Syndrome; (3) the harsher-than-contemplated conditions Mr. Donato experienced because of the pandemic; and (4) his post-conviction rehabilitation. (*Id.* at 2.)

Mr. Donato supplemented the instant motion due to changed circumstances in August 2023. (Donato Suppl. Mem. (Dkt. 1559).) In this supplemental filing, Mr. Donato notes that he was transferred from FCI Danbury to the Bronx Community Re-Entry Center ("Bronx RRC") pursuant to BOP's authority under 18 U.S.C. § 3624(g)(1)(D), after the BOP determined that Mr. Donato would not be a danger to society if transferred to prerelease custody and that he was unlikely to recidivate. (Donato Suppl. Mem. at 2-4.) Since his transfer, Mr. Donato has gained full time employment and has been approved for weekend passes allowing him to spend weekends at his sister's home in the Bronx. (*Id.* at 2-3.) However, Mr. Donato is still restricted to the Bronx RRC when not working or staying with his sister, unless given specific passes for "church, laundry, doctor's appointments, gym, etc." (*Id.*) This includes restrictions that prevent him from taking part in the care of Anthony Jr., Mr. Donato's son. The Defendant notes, for instance, his inability to attend meetings to discuss his son's Individualized Education Program, to assist his son in helping him get a job, or to help his son to participate in social activities. (*Id.* at 6.) Mr. Donato also notes that at the time of this supplemental filing, he had been incarcerated for 19 years and that when accounting for FSA credits, he has served 91.8% of his statutory time. (*Id.* at 7.) His current projected release date is March 8, 2025. (*Id.* at 6.)

On October 21, 2023, the court directed the Government to respond to Mr. Donato's supplemental filing and for Mr. Donato to

reply. (*See* Min. Entry dated October 12, 2023.) In these filings, the court directed the parties to discuss the recent amendments by the Sentencing Commission relating to compassionate release. (*Id.* (citing *Amendments to the Sentencing Guidelines*, U.S. Sentencing Commission (Apr. 27, 2023), available at https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/202305_RF.pdf).) Both parties have responded to the court's order. (*See* Government Response in Opposition) ("Gov. Opp. to Suppl.") (*United States v. Donato*, 03-CR-929 (Dkt. 1247); Donato Reply to Government's Response in Opposition ("Reply to Gov. Opp. to Suppl.") (Dkt. 1571).)

The court now turns to the present motion. The court first discusses the law providing the standards for compassionate release, which have undergone several changes in recent years, before considering the merits of Mr. Donato's motion.

## II. DISCUSSION

### A. Legal Background on Compassionate Release

Today's compassionate release (or sentence reduction)[2] statute was first enacted as part of the Comprehensive Crime Control Act of 1984. *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020) (citing Pub. L. No. 98-473, 98 Stat. 1837, 1998-1999 (1984). As amended in 2018, the statute authorizes a district court to "reduce the term of imprisonment" for a defendant who meets three requirements: administrative exhaustion, extraordinary and compelling reasons warranting a reduction in sentence, and a demonstration that the reduction in sentence is warranted

---

[2] Although courts generally refer to motions under this statute as compassionate release motions, the statute speaks in terms of sentence reduction rather than release. *See* 18 U.S.C. § 3582(c)(1)(A). This court uses "sentence reduction" and "compassionate release" interchangeably to refer to Mr. Donato's motion.

4

after consulting the factors set forth in 18 U.S.C. § 3553(a). 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018.

### 1. Administrative Exhaustion

A defendant may move for compassionate release only after they have "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A).

Prior to 2018, motions for compassionate release could be brought only by the Director of the Bureau of Prisons, making the BOP the sole arbiter of compassionate release motions. *Brooker*, 976 F.3d at 233.[3] The First Step Act expanded the ability to bring motions to defendants if the "BOP either declines to support or fails to act on that defendant's motion." *Id.* Because the BOP has very rarely brought motions for compassionate release, *see United States v. Johnson*, No. 16-CR-319 (NGG), 2023 WL 3093617, at *7 (E.D.N.Y. Apr. 26, 2023) (collecting cases and finding that the BOP has effectively abdicated its role as the initial gatekeeper for sentence reduction motions), the First Step's Act amendment allowing defendants to make the motion on their own behalf has had a profound impact. In 2018, only 34 individuals received compassionate release. *Brooker*, 976 F.3d at 233. Since the First Step Act became law in December 2018, over 4,100 motions for compassionate release or sentence reduction have been granted. *See* Federal Bureau of Prisons, First Step Act, https://www.bop.gov/inmates/fsa/ (last visited February 14, 2024).

---

[3] When quoting cases, and unless otherwise noted, all citations and quotation marks are omitted, and all alterations are adopted.

5

### 2. Extraordinary and Compelling Reasons Warranting Release

After exhausting administrative appeals with the BOP, the defendant must then demonstrate that "extraordinary and compelling reasons" warrant a reduction in sentence. *Id.* § 3582(c)(1)(A)(i).

This standard has existed since 1984, when Congress removed parole from the federal system and introduced compassionate release. *See* Pub. L. No. 98-473, 98 Stat. 1837, 1998-1999 (1984); *see also* Shon Hopwood, *Second Looks & Second Chances*, 41 Cardozo L. Rev. 83, 100 (2019) (reviewing the history of compassionate release). Rather than define this standard, Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," with the only limitation being that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." *Id.*; 28 U.S.C. § 994(t). Last year, on November 1, 2023, a Sentencing Commission Policy Statement providing an updated definition of "extraordinary and compelling reasons" became effective. *See* U.S. Sent'g Guidelines ("U.S.S.G.") § 1B1.13 (amended Nov. 1, 2023).

The latest definition was meant to accord with the First Step Act's purpose of "'increasing the use' of sentence reduction motions under section 3582(c)(1)(A)." *See* United States Sent'g Commission, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* at 6, https://www.ussc.gov/sites/default/files/pdf/amendment-process/official-text-amendments/202305_Amendments.pdf [hereinafter "Nov. 1, 2023 Amendments to U.S.S.G"] (citing First Step Act § 603(b)). The Policy Statement first provides specific examples of what establishes an extraordinary and compelling

reason. These examples include those premised on: (1) a defendant's medical circumstances, U.S.S.G. § 1B1.13(b)(1); (2) a defendant's age, *id.* § 1B1.13(b)(2); (3) a defendant's family circumstances, *id.* § 1B1.13(b)(3); and (4) abuse suffered by the defendant while in custody, *id.* § 1B1.13(b)(4). Each example includes specific requirements that, when met, would allow a reduction in sentence if warranted after the court reviews the 28 U.S.C. § 3553(a) factors.[4]

The new definition also includes a catch-all provision authorizing the court to consider "Other Reasons" that demonstrate extraordinary and compelling reasons warranting a reduction in sentence. U.S.S.G. § 1B1.13(b)(5). Under this provision, a sentencing court may find that this standard is met if "[t]he defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described in paragraphs (1) through (4), are similar in gravity to those described in paragraphs (1) through (4)." *Id.* The Commission "considered but specifically rejected a requirement that 'other reasons' be similar in *nature and consequence* to the specified reasons." *See* Nov. 1, 2023 Amendments to U.S.S.G at 10 (quoting First Step Act § 603(b) (emphasis added)). "Rather, they need be similar only in *gravity*, a requirement that inheres in the statutory requirement that they present extraordinary and compelling reasons for a sentence reduction." *Id.* (emphasis added). The Commission also noted the unique position judges are in "to determine whether the circumstances warrant a reduction" and that determinations of whether

---

[4] Section 1B1.13(b)(2), for instance, requires that the defendant "(A) is at least 65 years old; (B) is experiencing a serious deterioration in physical or mental health because of the aging process; and (C) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less." *Id.* § 1B1.13(b)(2); *see also, e.g., id.* § 1B1.13 (b)(1) (listing four separate ways in which a defendant's medical circumstances constitute extraordinary and compelling reasons for a reduction in sentence).

7

the totality of the circumstances supports a sentence reduction are best left to the reviewing court. *Id.* This provision, U.S.S.G. § 1B1.13(b)(5), therefore affords the court significant discretion to determine when a reduction in sentence is warranted.

The Policy Statement also clarifies that any circumstances establishing extraordinary and compelling reasons warranting a reduction need not have been "unforeseen at the time of sentencing." U.S.S.G. § 1B1.13(e). "Therefore, the fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude consideration for a reduction under this policy statement." *Id.*

"Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t); *see also* U.S.S.G. § 1B1.13(d). However, a defendant's rehabilitation "may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted." U.S.S.G. § 1B1.13(d). In addition, an "unusually long sentence" may be considered in determining whether the defendant demonstrates an extraordinary and compelling reason only where (1) a defendant has served at least 10 years of their term of imprisonment; (2) there has been a change in law; and (3) the change in law would "produce a gross disparity" between the sentence being served and the sentence that would likely be imposed at the time the motion was filed. U.S.S.G. § 1B1.13(b)(6). Except as provided in U.S.S.G. § 1B1.13(b)(6), "a change in the law" may also generally not be considered for the purposes of determining whether extraordinary and compelling reasons exist. *Id.* § 1B1.13(c). However, "if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction[,]" a change in law may still be considered when determining the extent of any reduction. *Id.*

In sum, the new definition provides defined circumstances in which a court shall find a sentence reduction is warranted, U.S.S.G. § 1B1.13(b)(1)-(4), and clarifies that district courts retain significant discretion in determining whether to grant or deny a motion for sentence reduction, *id.* § 1B1.13(b)(5); *see also United States v. Antney*, No. 17-CR-229 (CBA), 2021 WL 4502478, at *1 (E.D.N.Y. Sept. 20, 2021) (citing *Brooker*, 976 F.3d at 237).

### 3. The § 3553(a) Factors

After finding the defendant has met the administrative exhaustion and extraordinary and compelling reasons requirements, the court must consider the factors set forth in 18 U.S.C. § 3553(a) to determine whether and to what extent a reduction in sentence is warranted. *Id.* § 3582(c)(1)(A).

These factors include, among others:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.] 18 U.S.C. § 3553(a)(1)-(2).

A court must also consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* at § 3553(a)(6).

The court now turns to Mr. Donato's arguments for compassionate release.

### B. Application to Mr. Donato

Mr. Donato bears the burden of demonstrating that a reduction in sentence is warranted. *United States v. Phillibert*, 557 F. Supp. 3d 456, 458 (S.D.N.Y. 2021). Prior to reviewing each requirement, the court notes that because Mr. Donato submits his motion for compassionate release *pro se,* it will liberally construe his submissions to "raise the strongest arguments they suggest." *United States v. Pilcher*, 950 F.3d 39, 44 (2d Cir. 2020).

#### 1. Administrative Exhaustion

The parties do not dispute that the Defendant exhausted his administrative remedies with the Bureau of Prisons. (*See* Opp. at 5 n.1.) Therefore, this requirement is met.

#### 2. Extraordinary and Compelling Reasons

Mr. Donato argues that four circumstances, when viewed together, establish extraordinary and compelling reasons warranting a reduction in his sentence; specifically,

> (1) the stark sentencing disparity with some of Mr. Donato's equal and more culpable co-defendants, and with defendants in a related case, who received lesser sentences; (2) Mr. Donato's family circumstances with a special-needs son (Anthony Jr.) who would greatly benefit from the caregiving and support Mr. Donato would provide; (3) the "twice as punitive" harsher than usual continuing prison conditions due to the Covid-19 pandemic; and (4) his remarkable post-conviction rehabilitation over the past nearly 18 years. (Second Mot. for Reduction at 2 (footnote omitted).)

When considering the factors together, the court finds that Mr. Donato's family circumstances, conditions of confinement, and his rehabilitation, when considered together, establish "extraordinary and compelling reasons" that warrant a reduction in his sentence.[5]

### a. Family Circumstances

Mr. Donato now resides at the Bronx RRC, but he continues to face restrictions that prevent him from providing care to his son, Anthony Jr. who has Down Syndrome. (Second Mot. for Reduction at 12-13; Donato Suppl. Mem. at 5-7.) These restrictions prevent him from, *inter alia*, "being able to attend meetings at his program to discuss his IEPs (Individualized Education Program), assist in helping Anthony Jr. get a job, help him participate in social activities . . . " (Donato Suppl. Mem. at 6-7.) The impact of Defendant's incarceration was exacerbated when Anthony Jr.'s brother, who assisted in taking care of Anthony Jr., moved out of the home in which Mr. Donato's ex-wife and Anthony Jr. lived. (Second Mot. for Reduction at 13-14.) This left their mother, who has a full-time job, as Anthony Jr.'s only caretaker. (*Id.*)

This impact on the Defendant's son is supported by numerous letters from family and friends. This includes a letter from the Defendant's daughter, who asserts that her brother cannot survive without the help of others and that he has struggled with basic skills since the Defendant entered custody. (Second Mot. for Compassionate Release, Ex. F.) She stresses the positive role that Mr. Donato will play in Anthony Jr.'s life once released. (*Id.*) Similar descriptions of Anthony Jr. are reviewed in letters from the Defendant's sister, ex-wife, and a family friend who note the

---

[5] The court does not rely on the sentencing disparities cited by Defendant in finding that there are extraordinary and compelling reasons warranting a reduction. (Second Mot. for Reduction at 7-10.) The court considers these disparities, *infra*, however, when reviewing the proper reduction after consulting the § 3553(a) factors.

role that Mr. Donato played in his son's life and the material ways in which his son would benefit from additional care provided by his father. (Second Mot. for Reduction, Ex. G-I.) This is also supported by a letter written by Anthony Jr., himself, with the help of his sister. (Second Mot. for Reduction, Ex. J.) In the letter, Mr. Donato's son recalls the time he spent with his father prior to Mr. Donato's incarceration and expresses a desire to spend more time with him. (*Id.*) The court found each of these letters valuable in providing a fuller picture of Mr. Donato's family circumstances.

The court recognizes that it was apparent to Mr. Donato when he pleaded guilty and stipulated to a 25-year sentence pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C), that his incarceration as a result of his criminal activity would negatively impact his family. (*See* PSR ¶¶ 126-27.) But foreseeable consequences of a conviction may still be considered in finding that extraordinary and compelling reasons warrant a reduction in a defendant's sentence. *See* U.S.S.G. § 1B1.13(e). Mr. Donato has demonstrated that his release would have a substantial positive impact on his son's well-being, and he has displayed a consistent interest in taking on a caretaking role upon his release. (*Id.*; *see also* Donato Suppl. Mem. at 6-7.) His release would alleviate caretaking responsibilities that other family members have been forced to shoulder as a result of Mr. Donato's conviction. (Second Mot. for Reduction at 13-14.)

In sum, the court finds that Mr. Donato's family circumstances support a finding that extraordinary and compelling reasons warrant a reduction in his sentence.

### b. Conditions from COVID-19

The second factor supporting a reduction in sentence are the punitive conditions that Mr. Donato faced in custody due to the COVID-19 pandemic and its attendant lockdowns and restrictions on visitation and programming. (*Id.* at 16-17; Reply at 9-10.)

12

The conditions of incarceration during the pandemic have been severe, including "onerous lockdowns," *United States v. Hatcher*, No. 18-CR-454-10 (KPF), 2021 WL 1535310, at *3 (S.D.N.Y. Apr. 19, 2021), the "curtailment of facility programming and visitation," *United States v. Oquendo*, No. 13-CR-357-1 (KPF), 2023 WL 199609, at *5 (S.D.N.Y. Jan. 17, 2023), and "outbreaks made worse by the difficulties of social distancing in prison–which have left inmates susceptible to and fearful of serious illness or death." *Johnson*, 2023 WL 3093617, at *10. This court and others have therefore found support for a reduction in sentence for defendants who have "demonstrated that their imposed sentence was more severe than originally intended, due to the pandemic." *Id.* These conditions support a reduction in sentence "particularly for defendants who have (i) served long sentences and (ii) been detained for the entirety of the pandemic." *Id.*

Mr. Donato has demonstrated that he experienced medical risks, restrictions on visitations, restrictions on prison programming, and continued lockdowns during his incarceration at FCI Danbury. (Second Mot. for Reduction at 16-17; Reply at 9-10.) Mr. Donato's first motion for a sentence reduction reviewed and provided evidence that he was especially susceptible to the risks of COVID-19. (*See generally* First Mot. for Reduction.) In the instant motion, Mr. Donato further describes how persistent lockdowns prevented him from seeing anyone outside the facility for extended periods. (Second Mot. for Reduction at 17.) And during these lockdowns, he was unable to take part in classes providing rehabilitative services that would have helped him to earn FSA credits toward early release. (*Id.*)

This court rejected the risk that the then-ongoing COVID-19 posed to the Defendant's health in 2020 as demonstrative of extraordinary and compelling reasons warranting a reduction in sentence. (*See* M&O Denying First Mot. for Reduction at 4.) However, COVID-19's impact on the conditions at Danbury, which

13

made Mr. Donato's period of incarceration more punitive than initially contemplated remains relevant to the present motion. *See* U.S.S.G. § 1B1.13(b)(5); *see also Oquendo*, 2023 WL 199609, at *5 ("courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences harsher and more punitive than would otherwise have been the case."). This is especially the case given Mr. Donato has served over 19 years in custody, more than 90% of his sentence, and he was detained over the entirety of the pandemic. *See Johnson*, 2023 WL 3093617, at *10.

In sum, Mr. Donato has demonstrated that his term of incarceration was more punitive than contemplated at the time of sentencing. This supports a finding that there are extraordinary and compelling reasons warranting a reduction in sentence.[6]

### c. Defendant's Rehabilitation

Mr. Donato has also demonstrated a record of rehabilitation during his incarceration. Mr. Donato has not had any disciplinary infractions during his period of incarceration and he has taken part in "thousands of hours" of programming that he states have increased his empathy and understanding, providing him skills to help him in his post-release life. (Second Mot. for Reduction

---

[6] The court stresses and reiterates its position that "the risks posed by the pandemic alone do not constitute extraordinary and compelling reasons for release, absent additional factors such as advanced age or serious underlying health conditions that place a defendant at greater risk of negative complications from the disease." (M&O Denying First Mot. for Reduction at 4.) However, Mr. Donato raises the conditions that existed during the pandemic as one of several reasons that when viewed in combination support a finding of extraordinary and compelling reasons warranting a reduction in his sentence. Mr. Donato's concerns extend beyond the general conditions that resulted to inmates during the COVID-19 pandemic. A different outcome here is therefore warranted.

at 20-21.)[7] His rehabilitation is supported by BOP staff members, such as his Commissary Department Supervisor who attests to Mr. Donato's "incredible turnaround from his troubled history." (Reply at 11-12.) Dr. B. Belicia, who worked with Mr. Donato on the education staff, attested to Mr. Donato's strong work ethic and creativity as a student and teacher, as well as his "positive impact on the attitude and productivity of his peers." (Reply at 12.) BOP records also indicate that his risks of recidivism and violence based on the BOP FSA Recidivism Risk Assessment, are minimal. (Reply at 13.)

His rehabilitation is further supported by his transfer to the Bronx RRC. BOP released Mr. Donato under 18 U.S.C. § 3624(g)(1)(D)(i), which allows for release after a determination by the warden that the prisoner would not pose a danger to society and is unlikely to recidivate.[8] Since his transfer, Mr. Donato has worked outside of the facility during the week and has resided in his sister's home without incident. Essentially, Mr. Donato has demonstrated that upon his release, Mr. Donato will be a productive member of the community.

Thus, Mr. Donato's rehabilitation, as supported by his record in prison and the decision to transfer Mr. Donato to the Bronx RRC,

---

[7] The court finds it notable that "from 2009 until the passage of the FSA, Mr. Donato completed approximately 101 programs and classes, which included Victim Impact, with the full knowledge that he would not earn a single day off his sentence." (*See* Second Mot. for Reduction at 21.) He states that he "engaged in all such positive activities without any tangible incentive other than self-improvement." (*Id.*)

[8] In his supplemental motion, Mr. Donato argues that his transfer to the Bronx RRC does not moot his request for a reduction in sentence. (Donato Suppl. Mem. at 5-6.) The court agrees. Mr. Donato continues to be restricted in material ways that impact his family circumstances, in particular his relationship with his son. Moreover, this transfer does not alter the analysis as it concerns the conditions of confinement during COVID and his rehabilitation.

provide strong support for a reduction in his sentence when considered alongside his family circumstances and his conditions while incarcerated. *See* U.S.S.G. § 1B1.13(d) (noting that rehabilitation may be considered alongside other factors in finding that extraordinary and compelling reasons warrant a reduction in sentence); *United States v. Williams*, No. 09-CR-558 (CM), 2023 WL 4785286, at *12 (S.D.N.Y. July 27, 2023) (noting that rehabilitation tends to "tip the scales" when aggregated with other compelling factors).

When considering the circumstances as a whole, Mr. Donato has demonstrated that extraordinary and compelling reasons warrant a reduction in his sentence.

### d. The Government's Arguments

Before reviewing the § 3553(a) factors, the court addresses a few of the Government's arguments against finding that extraordinary and compelling reasons warrant a reduction in sentence.

First, the Government does not adequately consider Mr. Donato's circumstances as a whole. The Government's argument is structured to argue that each circumstance Mr. Donato cites does not independently warrant a reduction in sentence. (*See, e.g.,* Opp. at 8, 10, 11 (concluding that each of Mr. Donato's first three arguments do not meet this requirement).) After the court directed the Government to discuss how the November 1, 2023 amendment to the definition of "extraordinary and compelling reasons" impacts Mr. Donato's motion, it did not address at all the provision that directs the court to consider whether the combination of circumstances provides other reasons warranting a reduction in Defendant's sentence. (*See generally* Gov. Opp. to Suppl. at 3.) *See also* U.S.S.G. § 1B1.13(b)(5). When considering Mr. Donato's circumstances under this provision, this standard is met.

The Government also argues that a reduction is not warranted because Mr. Donato agreed to his 25-year term pursuant to a

11(c)(1)(C) plea. (Gov. Opp. to Suppl. at 2.) However, there is no support for the argument that an "agreed-upon" sentence is treated any differently when determining whether extraordinary and compelling reasons warrant a sentence reduction. (*Id.*) Courts have found that even sentences subject to mandatory minimums could be reduced once a court finds that extraordinary and compelling reasons warrant a sentence reduction. *See Williams*, 2023 WL 4785286, at *6–7 (collecting cases). That the court is not restricted from reducing a sentence when this standard is met has been further clarified by the November 1, 2023 amendment, which notes that the circumstances the court considers need not be unforeseen at the time of sentencing. U.S.S.G. § 1B1.13(e). Thus, the court rejects that an agreed-upon sentence pursuant to a 11(c)(1)(C) plea should impact the Defendant's motion.

Finally, the Government argues that Mr. Donato's high sentence was warranted by the severity of his crimes. The harm caused by the Defendant as a member of the Bonanno crime family is well known to this court. But citing to the severity of the Defendant's crime does not end the inquiry. As discussed *supra*, Mr. Donato has served 19 years in prison, or over 90% of his original sentence when accounting for early release credits. And a substantial portion of his time was served in conditions that were harsher than initially contemplated by this court at sentencing. Mr. Donato has also demonstrated his commitment to rehabilitation and to supporting his family as a productive member of society upon his release. The severity of a defendant's crimes alone does not preclude a reduction in sentence. The severity of the crimes is relevant, however, when considering the § 3553(a) factors to determine the extent to which a defendant's sentence should be reduced.

The court therefore rejects the Government's arguments against a finding that extraordinary compelling reasons warrant a reduction in Mr. Donato's sentence.

### 3. § 3553(a) Factors

The court may only reduce a Defendant's sentence "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A).

If this court were sentencing Mr. Donato today, he would receive a substantial sentence for his conduct. It is inarguable that the crimes for which Mr. Donato pleaded guilty are very serious. As discussed in Mr. Donato's presentence investigation report, the Defendant was a soldier in the Bonanno organized crime family. (PSR ¶ 66.) In this role, he conspired and acted as a driver in connection with the murder of Frank Santoro (*Id.* ¶¶ 33-34), and he took part in the conspiracy and attempted murder of David Nunez, which led the victim to suffer serious injuries. (*Id.* ¶¶ 51-54.) He also operated illegal gambling businesses for the Bonanno Family for decades, which provided the enterprise and its leaders significant money and influence. (*Id.* ¶¶ 2, 55-59.) Prior to sentencing, Mr. Donato was found to be an organizer or leader of the gambling operation; however, he was not found to be an "organizer, leader, manager, or supervisor" of the murder and attempted murder conspiracies. (*Id.* ¶¶ 68-69.)

But the reality is that Mr. Donato has served a substantial sentence. He has served over 19 years in conditions that, as discussed, were more punitive than contemplated at the time the court accepted Mr. Donato's 11(c)(1)(C) plea which stipulated his sentence. And his 25-year term was longer than the terms for almost all of his co-defendants, including some who were engaged in more serious criminal conduct and had more serious

criminal histories. (Second Mot. for Reduction at 8-9.)[9] A sentence of time served would therefore reflect the nature and circumstances of his offense as well as the offense's seriousness. His lengthy term, accounting for the punitive conditions in the facility during the pandemic and the collateral consequences on his family, also serves as an effective general deterrent to others, as well as a specific deterrent to Mr. Donato who has demonstrated a capacity and interest in living his post-release life as a law-abiding citizen. *See* 18 U.S.C. § 3553(a)(1)-(2). Finally, the sentence avoids unwarranted disparities for both individuals generally convicted of similar conduct and those sentenced for their participation in the Bonanno crime family.

After consulting the § 3553(a) factors, the court therefore reduces Mr. Donato's sentence to time served plus a period of two years of supervised release, during which all previously imposed conditions will apply. (Judgment.)[10] The court notes that Mr. Donato will therefore be released a little over a year earlier than his currently expected release date of March 9, 2025, and be on supervised release for two years following his release rather than three years. This sentence is sufficient but not greater than necessary to fulfill the goals of sentencing. See 18 U.S.C. § 3553(a).

---

[9] These sentences include: John Spirito (20 years); Anthony Aiello (30 Years); Anthony Indelicato (20 years); Michael Mancuso (15 years); Anthony Urso (20 years); Joseph Cammarano (15 years); Louis Attanasio (15 years); Peter Calabrese (15 years); Joseph Desimone (12 years); Louis Restivo (12 years); John Palazzolo (12 years); Richard Riccardi (12 years); Robert Attanasio (10 years); Michael Cardello (10 years); Peter Cosoleto (10 years); and Patrick Romanello (10 years). (*Id.*)

[10] These conditions include the standard conditions of supervision as well as three special conditions which: (1) prevent the Defendant from possessing a firearm; (2) prevent the Defendant from associating with individuals affiliated with organized crime or gangs, and (3) require the Defendant to submit his person, residence and other premises under his control to search, subject to certain limitations. (*Id.*)

### III. CONCLUSION

For the reasons discussed, Donato's motion for compassionate release is GRANTED, and his sentence is reduced to time served, followed by a period of supervised release for two years, during which all previously imposed conditions will apply.

This order is STAYED for up to thirty days for the verification of the defendant's residence, establishment of a release plan, and to make appropriate travel arrangements. The court will notify Probation immediately to accelerate the preparation of Mr. Donato's release plans. As soon as a residence is verified, a release plan is established, and appropriate travel arrangements are made, the defendant shall be released. If more than thirty days are needed to make these preparations, the parties shall immediately notify the court and show cause why the stay should be extended.

SO ORDERED.

Dated: Brooklyn, New York
February 16, 2024

s/NICHOLAS G. GARAUFIS
NICHOLAS G. GARAUFIS
United States District Judge